(73 N. W. Rep. 527.)

---

E. E. REDMON, *et al vs.* P. P. CHACEY.

Opinion filed January 18th, 1898.

**Drainage Warrants—No County Liability Created Thereby.**

Section 7 of the drainage law now in force (being Ch. 51, Laws 1895) provides that the county drain commissioners may issue warrants drawn upon the county treasurer and payable out of the drainage fund (which could be raised only by special assessments within a limited district) and negotiate the same, for the purpose of raising funds with which to pay damages allowed for right-of-way for drains. *Held,* that said warrants would create no general

liability against the county, and their issuance would not constitute a loan of the credit of the county, within the meaning of § 185 of the state constitution.

### Drainage Bonds Not Loan of County Credit.

Said drainage act provides that the entire cost of locating and constructing drains shall be paid by special assessments upon the property and municipalities benefited, and in proportion to benefits received; but § 31 of the act provides that, instead of levying this entire cost in one year, the county may issue and negotiate bonds for the amount, running for a series of years, and then collect from the proper taxing district the necessary fractional part of the cost during each year of the life of the bonds, and keep the same as a sinking fund with which to pay the bonds at maturity. The section also declares that no county shall be liable for the payment of such bonds, but that they shall be paid only out of the sinking fund thus created, and the bonds shall recite that they are issued under said act, and are to be paid out of such sinking fund. *Held,* that the issuance of said bonds would not amount to a loan of the credit of the county, under the provisions of § 185 of our constitution.

### Uniform Taxation—Constitutional Limitation.

Granting that all special assessments for local improvements in excess of benefits received are, in effect simple taxation, and void, under our constitution, if not uniform, yet the question cannot arise in this case, as under this statute no drain can be constructed where the total cost exceeds the total benefits.

Appeal from District Court, Cass County; *Pollock,* J.

Action by E. E. Redmon, C. Shepard, and George F. Clark, as drain commissioners for Cass County, N. D., against P. P. Chacey. From an order overruling defendant's demurrer to the complaint, he appeals.

Affirmed.

*D. A. Lindsey,* for appellant.

*Ball, Watson & Maclay,* and *F. B. Morrill,* for respondents.

BARTHOLOMEW, J. This action was brought by the plaintiffs in their capacity of drain commissioners of Cass County, and the object sought was the condemnation of a strip of ground across defendant's land for drain purposes. There was a demurrer to the complaint, which was overruled; and defendant, electing to stand thereon, brings the ruling upon the demurrer into this court for review. The demurrer was not leveled at any defect in allegation, but was based entirely upon the ground of the alleged unconstitutionality of the statute under which plaintiffs were

assuming to act. In 1893 the legislature enacted a general drainage law (see Ch. 55, Sess. Laws, 1893,) which was before us in 1894, in *Martin* v. *Tyler*, 4 N. D. 278, 60 N. W. Rep. 392. We held that statute unconstitutional, primarily upon the ground that it violated § 14 of the constitution, which provides that private property shall not be taken for public use unless the owner be first compensated in money therefor, and also that it violated § 185 of the constitution, which prohibits any county from loaning its credit. In 1895 the legislature passed another drainage law, with the evident intent and purpose of obviating the defects of the law of 1893. See Ch. 51, Laws 1895. It is urged in this case that the efforts of the legislature were futile, and that the new law is vulnerable to the same objections that required us to hold the former law unconstitutional. In this we think appellant is mistaken, and, in view of the discussion that the points received in the former case, we can state our reasons briefly. The general features of the present law are practically the same as those of the law of 1893. It provides for county boards of drainage commissioners, and that drains shall only be established when petitioned for in the manner provided in the statute, and that the expenses of the construction of the drains shall be met by taxation of the property and municipalities benefitted thereby. But the former law required parties whose land was taken under condemnation proceedings to receive warrants on the drainage fund as security for the pay, while under other provisions of the act there could be no money in the fund drawn against until after the levy and collection of a special tax. That, we held, was not the compensation contemplated and required by § 14 of the constitution. The present act provides that, when the amount of compensation to be paid has been ascertained by the proper tribunal, a special tax shall be levied against the benefited property and municipalities to raise such amount, but if, in the meantime, the drain commissioners desire to proceed with the work, they may issue warrants, in an amount sufficient to pay such amount, drawn upon the county treasurer, and payable out of the fund pertaining

to that particular drain, and which warrants may be negotiated at not less than par, and the proceeds used in paying for such right-of-way. If warrants are not so issued and negotiated, no further proceeding can be taken in the matter until the special tax is collected. Appellant urges that these warrants are in fact county obligations, and the proceeding amounts to a loan of the credit of the county, which this court condemned as unconstitutional in *Martin* v. *Tyler, supra*. But we see no force in the contention. These warrants are issued, not by the county commissioners, but by the drain commissioners,—a board whose authority in that line is limited to dealing with the drainage fund, and that cannot bind the county generally. Moreover, these warrants are expressly drawn against the drainage fund. That a warrant so drawn creates no general liability against the municipality is well settled. See Burr. Pub. Secur. 635, *et seq*; 15 Am. & Eng. Enc. Law, 1214, *et seq*. The case of *U. S.* v. *Clark Co.*, 96 U. S. 211, cited by appellant, decides nothing differently, when read in the light of its facts. The act of 1893, (§ 38) provided that instead of imposing in one year, upon the persons and municipalities subject to taxation, the entire burden of locating and constructing the drain, the county might issue its bonds running for a series of years, and in the meantime collect yearly the proper portion of said expense, and hold the same as a sinking fund out of which to pay the bonds at maturity. But under that act the county was absolutely liable on the bonds, whether it succeeded in collecting the tax or not; and we held that it amounted to a loan of the credit of the county to the parties primarily liable for the expense, and hence was a violation of § 185 of the constitution. The same objection is urged against the present law, which also provides for the issuance of county bonds under the same circumstances, and for the accumulation of a sinking fund in like manner. But it goes further and provides (§ 31.) "No county shall be liable for the payment of any bonds issued under the provisions of this act, but such bonds shall be paid only out of the sinking funds created as in this act provided;" and further,

"Such bonds shall contain a recital that the same are issued in accordance with the provisions and pursuant to the authority of this act, and that they are to be paid out of sinking funds to be created as in this act provided." The same reasoning which requires the holder of a county warrant drawn upon a particular fund to look to that fund alone for payment must require the holder of a bond issued under this statute to look alone to the sinking fund for his payment. The statute becomes a part of his contract. This is elementary.

One more point is urged. It is based upon a question discussed, but not decided, in *Martin* v. *Tyler.* It is asserted that special assessments for local improvements cannot exceed the benefits received from such improvement. If special assessments do exceed benefits, then, as to the excess, it is taxation, pure and simple, and void for lack of uniformity. We are not required to decide whether special assessments may not exceed benefits. The authorities upon both sides of that question are cited in *Martin* v. *Tyler.* But the question cannot arise under this statute, unless we assume that the drain commissioners will not proceed in the performance of their duties according to the plain directions of the statute. This presumption we cannot indulge. The first duty of the drain commissioners, when a petition for a drain is presented to them, is to ascertain the entire cost of locating and constructing the drain, and also to assess the benefits accruing therefrom,—all persons interested having a right to be heard as to such matters; and, if it appear that the total cost of the drain will exceed the benefits derived therefrom, the drain commissioners can proceed no further, and the petitioners are liable for all costs incurred in the matter up to that time. If this statute be obeyed, the special assessments can never exceed the benefits. The objections urged against the complaint in the brief of counsel (and we have considered no others) are not well taken, and the order overruling the demurrer is affirmed. All concur.