## THE PINE TREE LUMBER COMPANY *v.* CITY OF FARGO.

Opinion filed July 21, 1903.

### Under the General Incorporation Act, Cities Are Not Limited to Special Assessments for Payment of Street Improvements.

1. Cities organized under the general incorporation act are authorized to alter, extend, grade, pave, and improve streets, and to make contracts therefor. They are authorized to provide for the expense of making such improvements by special assessments upon adjoining property, but such cities are not restricted so as to require them to contract for payment for such improvements only out of the particular fund realized from special assessments.

### May Render Itself Generally Liable Therefor.

2. There is no charter restriction upon the power of a city to render itself generally liable upon its contract for special improvements.

### Under the Scheme of the Statute, City Makes Improvements and Reimburses Itself by the Special Assessment.

3. The scheme of the statute is to enable a city to make special improvements upon its streets, and to reimburse itself for the cost of the same through special assessments of property abutting upon and benefited by the improvements, to the extent of assessments made, and this without cost to the general taxpayer.

### When a City Issues a Warrant On a Fund To Be Raised by Special Assessment, It Assumes the Duty of Raising and Paying Such Fund and Cannot Divert It.

4. The city of Fargo contracted for the pavement of Front street, and stipulated therein to pay for the work by city warrants drawn on account of the contract, and thereafter, in payment, delivered to the contractors, and they accepted warrants directing the payment of the specified amounts "out of the Front street paving funds in the treasury not otherwise appropriated for account contract paving Front street." The city imposed upon itself by such transaction the duty of making and collecting the assessments for creating the fund out of which such warrants could be paid, and of paying such warrants with-

out unnecessary delay; and a diversion of such moneys, when collected, to any other purpose than the payment of the warrants drawn against the fund, was a breach of contract, for which the city could be held liable in damages.

**Plaintiff Need Only Prove the Fund, Sufficient Money Therein, Presentation, Demand and Nonpayment; Improper Credits to Funds, Matter of Defense.**

5. In an action against a city to recover against it generally because it has diverted from the purposes of its creation moneys realized by assessments for a special fund against which plaintiff's warrants were drawn, it was sufficient for plaintiff to prove his warrants, and that the special fund was created by the city; that there was credited to this fund an amount sufficient to pay his warrants and all other warrants drawn against it; and that his warrants were presented and demand made for payment, and that they were unpaid. The burden was then shifted to the city to show what, if any, of the credits to the fund were improperly made, or otherwise to overcome the *prima facie* case of diversion made by plaintiff.

**Public Officers Are Presumed to Perform Their Duty.**

6. The presumption is that public officers do as the law and their duty require them.

**When An Official Duty Depends Upon the Performance of a Prior Act, the Latter Will Be Presumed Performed.**

7. Where an act is done by a public functionary in the discharge of official duty, which can be done only after the performance of some prior act, proof of the latter carries with it a presumption of the due performance of the prior act, and this though the prior act is required of the corporation of which he is an officer.

**Section 2183, Rev. Codes 1895, Does Not Prevent a City From Reimbursing a Fund for Special Improvements, for Advances Made Therefrom.**

8. Section 2183, Rev. Codes 1895, requiring all moneys received on special assessments to be held by the treasurer as a special fund to be applied to the payment of the improvement for which the assessment was made, and directing that such moneys shall be used for no other purpose does not prevent a city, when it has advanced money to pay for a special improvement, to reimburse itself later out of the special improvement fund.

**Objection That Complaint Does Not State a Cause of Action, Must Point Out the Particulars of Its Insufficiency.**

9. A general objection to any and all evidence under the complaint, on the ground that it does not state a cause of action, without pointing out any particulars wherein the pleading is considered insufficient, will not be considered.

**Motion for a Verdict Non Obstante Must Unite the Alternative of a New Trial, or Latter Will Not Be Awarded.**

> 10. A motion for judgment notwithstanding the verdict tests the sufficiency of the evidence to sustain the verdict rendered, and a new trial will not be awarded or errors considered which can only be remedied by new trial, when the moving party failed to unite with his motion for judgment *non obstante* a request for the alternative of a new trial.

Appeal from District Court, Cass county; *Pollock, J.*

Action by the Pine Tree Lumber Company against the City of Fargo to recover on certain city warrants. Plaintiff had judgment and defendant appeals.

Affirmed.

*M. A. Hildreth,* for appellant.

Under section 2183 of Political Code, the council and every city officer are prohibited from transferring money from one special fund to another. Such council and city officers are prohibited from making any such appropriation, or any contract, which would take any portion of the general funds of the city and apply it to any special improvement. *Engstad et al.* v. *Dinnie et al.,* 8 N. D. 1, 76 N. W. Rep. 292; *Roberts* v. *City of Fargo,* 10 N. D. 231, 86 N. W. Rep. 726; *City of Fargo* v. *Keeney et al.,* 11 N. D. 484, 92 N. W. Rep. 836.

The plaintiff cannot recover upon any theory under the evidence. He failed to show any misappropriation of the special assessments arising from the Front street and Northern Pacific avenue funds. A general liability against a municipality cannot arise excepting in instances where the city has failed to make an assessment on account of the failure of the law to provide for a special assessment, or officers have negligently failed to do their duty, or where the funds have been misappropriated by an act of the municipality itself. *Casey* v. *City of Leavenworth,* 17 Kan. 189; *Trustees of Bellview* v. *Hahn,* 82 Ky. 1; *Heick et al.* v. *Voight,* 11 N. E. Rep. 306; *Hammet* v. *Philadelphia,* 65 Pa. 146; *Chamberlain* v. *Cleveland,* 34 Ohio 551; *N. P. Lumber Mfg. Co.* v. *East Portland,* 14 Ore. 3; *Goose River Bank* v. *Willow Lake School Township,* 1 N. D. 26, 44 N. W. Rep. 1002; *Woodard* v. *Colhoun Co.,* No. 2182 Fed. Cases; *Lake* v. *Trustees of Williamsburg,* 4 Den. 520; *Eilert* v. *City of Oshkosh,* 14 Wis. 586; *Whalen* v. *City of LaCrosse,* 16 Wis. 271; *Finney et al.* v. *City of Oshkosh,* 18 Wis. 209; *People* v. *City of*

*Milwaukee,* 10 Mich. 274; *Goodrich* v. *Detroit,* 12 Mich. 279; *New·
Albany* v. *Sweeney,* 13 Ind. 245; *Casey* v. *Leavenworth,* 17 Kan..
189; *Swift* v. *Mayor,* 83 N. Y. 538.

Plaintiff's complaint is upon the warrants. They show on their
face that they are to be paid out of a special fund. Plaintiff can--.
not recover. *Martin* v. *City and County of San Francisco,* 16 Cal.
285; *People* v. *Gray,* 23 Cal. 125; *Dana et al.* v. *City and County·
of San Francisco,* 19 Cal. 486; *Wilson* v. *City of Aberdeen,* 52 Pac..
524; *Ger. Am. Savings Bank* v. *City of Spokane,* 38 L. R. A. 259.

Where work has been done under a law declared unconstitutional,.
and special assessments have been made thereunder, action will lie
generally against the municipality on the contract. *Barber* v. *Har--
risburg,* 64 Fed. Rep. 283; *Barber* v. *Denver,* 72 Fed. Rep. 336.

*Benton, Lovell & Holt,* for respondents.

An action on warrants drawn against a street improvement fund.
will lie against a city. *Potter* v. *New Whatcom,* 20 Wash. 589, 72
Am. St. Rep. 135; *Terry* v. *City of Milwaukee,* 15 Wis. 543.

The transfer of money from one fund to another being an official
act of the city treasurer the presumption arises that it was legally
made. And where some preceding act or pre-existing fact is neces--
sary to the validity of an official act, the presumption in favor of the·
validity of the official act is presumptive evidence of such act or·
fact. , *Delaney* v. *Schuette,* 5 N. W. Rep. 796; *Nonfire* v. *U. S.,*
164 U. S. 657, 17 Sup. Ct. Rep. 212, 41 L. Ed. 588; *U. S.. Bank·*
v. *Dandridge,* 12 Wheat. 64, 6 L. Ed. 552; *Rankin* v. *Hoyt,* 4
How. 327, 11 L. Ed. 996; *Huey* v. *Van Wie,* 23 Wis. 613.

Where an act is done which can only be legally done after a prior
act, proof of the latter carries with it proof of the prior act. *Ruther--
ford* v. *Hamilton,* 97 Mo. 543; *Kieth* v. *Bingham,* 100 Mo. 300;
*State* v. *Kempf,* 69 Wis. 470; *State* v. *Dugan,* 110 Mo. 138; *Boots·*
v. *Washburn,* 79 N. Y. 207; *Howard* v. *City of Oshkosh,* 33 Wis.
309; *Bilk* v. *Hamilton,* 130 Mo. 292.

Respondent having shown that the city had established and sup-·
plied with funds the accounts on which the warrants in suit were·
drawn, and the legal presumptions being in favor of the regularity
of these acts, a *prima facie* case was made of the city's present·
liability to pay the warrants out of such accounts. The burden
was thereby shifted upon the appellant to show any irregularity
that would .void such transfers. *Hockaday* v. *Board of Co. Com--*

*missioners,* 29 Pac. Rep. 291; *State* v. *Lee,* 37 Atl. Rep. 79; *Non-fire* v. *U. S., supra; Metropolitan St. Ry. Co.* v. *Powell,* 89 Ga. 601.

This burden was not assumed, and respondent's *prima facie* case results, and the accounts on which the warrants were drawn were shown to be regularly created and supplied with funds. *Woodcock* v. *Calais,* 68 Me. 244; *Littell* v. *Fitch,* 11 Mich. 524; *Pease* v. *Cole,* 53 Conn. 53; *Hockaday* v. *Board of County Com., supra.*

The appellant is liable to respondent out of its general fund, because the funds set apart for the payment of the warrants in suit were diverted to other purposes. *Potter* v. *New Whatcom,* 56 Pac. Rep. 394, 72 Am. St. Rep. 135; *Valleau* v. *Newton Co.,* 72 Mo. 593; *Same* v. *Same,* 81 Mo. 591; *City of Gladstone* v. *Thropp,* 71 Fed. 348; *Wilder* v. *City of New Orleans,* 87 Fed. 843, 31 C. C. A. 249; *Warner* v. *City of New Orleans,* 167 U. S. 467, 42 L. Ed. 239, 17 Sup. Ct. Rep. 892.

When the warrants in suit were issued, the appellant undertook to make proper assessments, collect them, and see that the money was paid over to the warrant holder, within a reasonable time after the completion of the contract. A failure to discharge these duties rendered the City of Fargo liable out of its general fund to the holders of the warrant in suit. *Commercial National Bk.* v. *Portland,* 33 Pac. Rep. 532; *Barber* v. *City of Harrisburg,* 64 Fed. Rep. 283; *Barber* v. *City of Denver,* 72 Fed. Rep. 336; *Wilder* v. *City of New Orleans, supra; Reilly* v. *City of Albany,* 112 N. Y. 42; *N. P. Lumber Co.* v. *East Portland,* 12 Pac. 4; *Cummings* v. *Mayor,* 11 Paige 596; *Buck* v. *City of Lockport,* 6 Lans. 251; *Mather* v. *City of San Francisco,* 115 Fed. Rep. 37.

There is a distinction between warrants made payable by law out of a special fund only, and those which are evidences of a general corporate indebtedness, but which are to be charged to a particular corporate fund. A municipality is liable for improvements out of its general funds when the laws authorize a special assessment upon property benefited. The resort to the property benefited after the work is done, is for the reimbursement of the city. *Clark* v. *Des Moines,* 19 Ia. 221; *Montague* v. *Horton,* 12 Wis. 599; *Kelley* v. *Mayor,* 4 Hill (N. Y.) 263.

At the close of plaintiff's testimony defendant's counsel moved for a directed verdict. The motion was denied. Plaintiff's counsel then moved for a directed verdict, which motion was granted. Thereupon defendant's counsel moved for judgment notwithstand-

ing the verdict, which motion was denied. Counsel did not ask for a new trial in connection with his motion *non obstante*. The right to a judgment *non obstante* is conferred by chapter 63, Laws of 1901.

This statute was adopted from Minnesota, and has had full construction there. The motion should be granted only when it clearly appears from the evidence that the cause of action or defense sought to be established, could not in point of substance constitute a legal cause of action or defense; and should be denied where it appears probable that the party has a good cause of action or defense, and the defects in the evidence are of such a character that they could be supplied upon another trial. *Cruikshank* v. *St. Paul, etc., Ins. Co.,* 77 N. W. Rep. 958; *Bragg* v. *Chicago, etc., Ry. Co.,* 83 N. W. Rep. 511; *Kreatz* v. *St. Cloud School Dist.,* 81 N. W. Rep. 533; *Richmire* v. *Andrews & Gage El. Co.,* 11 N. D. 453, 92 N. W. Rep. 819.

Appellant did not join to his motion for judgment a request for a new trial, and thereby waived his right to one, and this court will grant the motion or sustain the judgment. *Bragg* v. *Chicago, etc., Ry. Co.,* 83 N. W. Rep. 511; *Marquardt* v. *Hubner,* 80 N. W. Rep. 617; *Cruikshank* v. *St. Paul, etc., Ins. Co.,* 77 N. W. 958; *St. Anthony Bank* v. *Graham,* 69 N. W. Rep. 1077; *Kernan* v. *St. P. City Ry. Co.,* 67 N. W. Rep. 71.

COCHRANE, J. Action upon warrants (ten in number) drawn against city paving accounts by the city of Fargo. Plaintiff holds the warrants as transferee of the original paving contractors. The city of Fargo in July and August, 1895, entered into contracts for the paving of Front street and Northern Pacific avenue, in said city. Each contract provided that the payment should be by city warrants issued in behalf of the contract, to be accepted at par value. The warrants in suit, drawn under the Front street contract, directed each its payment "out of Front street paving funds in the treasury not otherwise appropriated for account of contract paving Front street." The warrant issued against the Northern Pacific avenue fund was in the same form, except that the name of the avenue is substituted for that of Front street. These warrants were issued and delivered in fulfillment of the contracts, and on October 9, 1895, were severally presented to the city treasurer for payment, registered by him, and indorsed, "Not paid for want of funds," and they are still un-

paid. In pursuance of its duty under these contracts, the proper officers of appellant opened two accounts on its books, known as "Front Street Paving Account" and "Northern Pacific Avenue Paving Account," respectively. It is admitted that special assessments were made to pay for these improvements, that all proceedings required by statute were duly and regularly taken, and that the assessments were from time to time collected. Delinquent assessments were certified to the proper authorities for collection, and collections made. $24,327.40 was credited by the city treasurer to the Front street paving account, and the total amount of warrants drawn against this account was $19,277.44. Of this, $1,048.92 represents the warrants in suit. The treasurer's books show a total credit to Northern Pacific avenue paving account of $17,160.02. The total amount of warrants drawn against this account was $14,355.99. Of this, $500 represents the warrant in suit. Of the $24,327.40 credited to the Front street account, $4,217.54 shows upon the books as "appropriated from street and bridge fund," and $2,411.89 as "transferred from North Broadway fund." Of the total credit to the Northern Pacific avenue paving account, $3,144.82 shows upon the books as "appropriated from street and bridge fund." On November 26, 1895, the delinquent assessments for the Front street paving were certified to the county auditor for collection, and amounted at that time to $4,029.45. Of this there was collected and remitted to the city treasurer $3,424.59. On November 29, 1895, the delinquent assessment roll for Northern Pacific avenue was certified to the county auditor for collection. The amount of unpaid assessments for this fund at that time was $2,550.17, and thereafter there was collected and remitted to the city treasurer, with accumulated penalties and interest, the sum of $3,206.45. At the time of the trial there was $219.17 in the Northern Pacific avenue paving account, and there was no money in the Front street paving account. No part of the interest or penalty upon these assessments was credited to the special accounts, but the city officers credited all the penalty and interest collected into the general fund. In the complaint each warrant is the subject of a separate cause of action, but a synopsis of one will illustrate the issues tendered as to all, because of the similarity in the form of averment. It alleges the incorporation of the plaintiff and defendant; the issuance and delivery of the described warrant pursuant to the contract referred to made with McDonald & O'Neil; the presentation for payment;

its registration; that it was indorsed, "Not paid for want of funds"; its sale and transfer to plaintiff; that it has not been paid; and that the paving fund has not been otherwise appropriated—and concludes as follows: "Plaintiff further alleges, upon information and belief, that the defendant, for the purpose of paying said warrant, undertook, promised, and agreed with the said McDonald & O'Neil, and their assigns, at the time of issuing said warrants, to cause the amount of money necessary to pay said warrants to be assessed, levied, and collected as a special tax upon the abutting real property benefited by said paving contract, and the paving laid thereunder, and that thereafter the defendant caused such special tax to be levied and assessed, and that defendant collected therefrom, for the Front street paving funds aforesaid, an amount of money sufficient to pay all the warrants issued on such funds, with interest thereon, including the warrant hereinbefore described, and that such money applicable to the payment of such warrants is now in such funds, and that, if sufficient of said money so collected and applicable for the payment of such warrants is not in such funds, it is because it has been wrongfully and unlawfully diverted therefrom and misapplied by the defendant, without the knowledge or consent of the plaintiff, or any other of the owners of said warrant or warrants; that, if any portion of the amount so levied and assessed remains uncollected, it is because of the negligence of the defendant city, and without the knowledge, or fault on the part of the plaintiff, or any of the prior owners of such warrant or warrants." The plaintiff prays à money judgment for the face of the warrant and interest. The answer is a general denial. At the conclusion of the testimony each party moved for a directed verdict. Plaintiff's motion was granted, and a verdict directed for the full amount claimed. Defendant's motion for judgment notwithstanding the verdict was denied. Judgment was entered for plaintiff, and defendant appeals.

*M. A. Hildreth,* for appellant.
*Benton, Lovell & Holt,* for respondent.

COCHRANE, J. (after stating the facts). Respondent's theory of his right to a recovery appears from the section of his complaint above quoted—in effect, that the city has received into each of these special funds an amount sufficient to pay all warrants issued against them, respectively, including the warrants in suit; that, if it has not funds in the accounts, is has misappropriated them, leaving plain-

tiff without remedy other than this to recover against the city generally.

The paving of its streets was a municipal improvement contracted for by the city, and, when completed, of general utility. Unless there is something in the general incorporation act or general statutes which otherwise directs, or by necessary implication limits. the right of a city to become generally liable upon its contracts for this class of improvements, or something in the contract with the city by which the claimant is limited in his recovery to the special. funds to be raised from the assessment of abutting property, we can. see no reason why the city cannot be held generally liable for debts. it has thus contracted. The city council, at the time this indebtedness was incurred, had power to alter, extend, grade, pave, and improve streets (subdivision 7, section 2148, Rev. Codes 1895), to make contracts therefor, and to provide for paying the expense. thereof. *Argenti* v. *City,* 16 Cal. 263. It was authorized to contract for the payment of such improvements out of the general funds. of the city. *Soule* v. *City* (Wash.) 33 Pac. 384, 1080; *Stephens* v. *City* (Wash.) 39 Pac. 266; *Clark* v. *City,* 19 Iowa 221, 87 Am. Dec. 423. In such event, it was required to make an appropriation. for the expense of the same before entering into a contract therefor. Sections 2262-2264, Rev. Codes 1895; *Engstad* v. *Dinnie,* 8. N. D. 1, 76 N. W. 292; *Roberts* v. *Fargo,* 10 N. D. 231, 86 N. W. 726; *City of Fargo* v. *Keeney,* 17 N. D. 484, 92 N. W. 836. It was also. authorized to provide for the expense of making such improvements. by special assessments upon adjoining property or property benefited thereby. Section 2265, Rev. Codes 1895. And this method. of defraying the expense of paving Front street and Northern Pacific avenue was pursued by the city.

No question is raised in this case as to the legality of the proceedings leading up to and including the assessments of the adjoining property, or for the collection of the special assessments. On the contrary, it is expressly admitted by counsel for the appellant that there was ample power in the city to make the assessments; that they were in fact made and collected from time to time; that delinquent assessments were certified to the proper authorities for collection, and that collections were diligently made. The case was presented on both sides upon the theory that the statutory requirements. as to the making of the improvements, through the instrumentality

of special assessments of benefited property, have been in all respects complied with, down to the time this suit was commenced.

The following summary of the sections of the general incorporation act, so far as applicable, will make manifest the basis of contention in this case, and the reasons for their solution. Reference is made in each instance to the Revised Codes of 1895. Power to make assessments for local improvements on property adjoining or benefited thereby is vested in the city council; also power to collect the same, and to fix, determine, and collect penalties for non-payment of any special assessment and taxes. Section 2265, Rev. Codes 1895. When the council deemed it necessary to grade, pave, or otherwise improve any street within the city limits, for which a special assessment was to be levied, it was required, by resolution, to declare such work necessary to be done, and to cause such resolution to be published in the official newspaper of the city once a week for four consecutive weeks, and, in the absence of a written protest by a majority of the property owners affected, the city council "shall have power to cause such improvement to be made and to contract therefor, and to levy and collect the assessment as hereinafter provided, and all work done under this section shall be let by contract to the lowest responsible bidder therefor." Section 2279, Rev. Codes 1895. By section 2280 it is provided that when the work has been determined upon, and the contract let, the city engineer shall calculate the amount of the assessment for each lot or parcel of ground abutting or bounding upon such improvement; and in making his estimate he was required to divide the entire cost of the improvement by the number of feet fronting or abutting upon the same, the quotient to be the sum to be assessed per front foot so abutting. It provides for the filing and approval of such estimate, and for the giving of notice and time and place of its approval. Section 2288 required an assessment roll to be made up, and prescribed what it should contain—this to be filed with the city treasurer—and required the city treasurer to publish this list for three weeks, with a notice that the assessments would become delinquent if not paid within thirty days after the date of the first publication, and that a penalty of 10 per cent would be added thereto after they became delinquent. By section 2287 it was provided that all assessments should draw interest after delinquency at the same rate as general taxes under the laws of the state, and it required the city treasurer to collect the assessments by distraint of

personal property, or, if it could not be made by distress, then by sale of the real property assessed. Sections 2295 to 2302 provided for time, place, and manner of selling the property assessed for delinquent special taxes, the redemption from such sales and the giving of deed when not redeemed. Sections 2308 to 2310 gave the city council power to issue bonds of the city, to be known as "Internal Improvement Bonds," the proceeds from the sale of the bonds to be kept as a special fund, separate from other funds of the city, and to be used exclusively for the payment for work done and material furnished in the making of the special improvement, and provided that no more of the fund should be used than the amount of the special assessment, and that all assessments, penalties, and interest should be credited to the fund as fast as collected, and should remain a part of the same. It was provided by section 2311 that all contracts and bonds of the city, under these sections of the statute, should be signed by the mayor and countersigned by the auditor, with the seal of the city affixed.

As between the city and the parties with whom it contracted to furnish the labor and material and to pave its streets, the city had power to render itself generally liable, notwithstanding the cost of the improvement was to fall ultimately upon the owners of the abutting property. The scheme of the statute was to enable the city to make the improvements enumerated in the statute, and to reimburse itself for the costs of the same through special assessments of property abutting upon, and theoretically, at least, benefited, to the extent of the assessments, by the improvements made. This scheme, if faithfully carried out, would avoid complications as to constitutional debt limits, and place it within the power of the city to collect the assessments in time to meet its contract obligations within the time agreed, and without borrowing from its general funds. The liability of the property holders for these assessments is to the city exclusively. The assessments are levied and collected by the city, and the money, when collected, comes into the city treasury. The contractor is not in privity with the property owners, and has no means of enforcing collection against them. He looks alone to the city. There is nothing in the statute which imposes upon the person to whom the contract is let to pave the streets the requirement to look alone to the proceeds of the special assessments for his pay, or limiting his recovery to the funds realized therefrom. On the contrary, the fact that the city may bond for the payment

of the indebtedness, the bonds not to exceed in amount the aggregate of the special assessment, and the funds realized from the assessments, including principal, penalties, and interest, to be kept in a special fund for their retirement, shows that, as to the contractor, the city may render itself generally liable, all the time looking to the special fund for its indemnity. Such has been the construction of charters of the same general phraseology and purpose. In *Meech* v. *City,* 29 N. Y. 212, it was ruled that where a municipal corporation was empowered to make a public improvement, the expense of which was to be borne, not by the whole city, but by the real estate owners benefited by it, the corporation to do the work, and the expense thereof to be ultimately assessed upon the property benefited, the corporation, by its proper officers, could either do the work itself, or contract for doing it. In the case of a contract, where the work was performed, the contractor could look to the city alone for payment; and the corporation, if the contract price was paid from the general fund, could reimburse itself and such fund out of the assessments made. In *Cumming* v. *Brooklyn,* 11 Paige 596— an action in equity to recover the contract price for grading the streets—it was adjudged that the city, having the general power of a corporation, was competent to enter into a contract with the complainants to grade the street, and to pay them for so doing. The charter gave general authority to the common council to cause the streets to be graded and paved, and there was nothing in the charter which prohibited the corporation from entering into general contracts for the making of such improvements. The court said: "It is true that the section of the charter which authorized these improvements to be made directs the expense thereof to be assessed upon the owners and occupants of the lands and premises benefited thereby, in proportion to the amount of such benefit. The assessment of the expense as a local tax is not, however, a restriction upon the power of the corporation, so as to require it to contract only for payments out of that particular fund. But this local tax is a fund which has been provided by the legislature to reimburse the corporation for the expense of an improvement which it has either paid or become liable to pay. And if the corporation, voluntarily or by compulsion, pays such expense out of its general fund, any citizen who pays taxes 'may apply to the proper tribunal to compel the corporation to cause the general fund to be reimbursed by an assessment and collection of the expense of such im-

provement from the owners of the property benefited, or out of the property itself, as authorized and directed by the charter." In *Hitchcock* v. *Galveston*, 96 U. S. 341, 24 L. Ed. 661, the city council, by its charter, was given power to grade, pave, and improve streets, the cost to be defrayed by the owners of lots fronting on the improvement. The court said: "The city is authorized to construct sidewalks, and, though the cost of construction is to be defrayed by the abutting lot owners, the city is to collect from them the cost. * * * The resort to the lot owners is to be after the work has been done, after the expense has been incurred, and it is to be for the reimbursement of the city." In *Heller* v. *City* (Kan.) 48 Pac. 842, the power to plant shade trees upon the streets was expressly given, and it was provided that assessments should be levied against abutting property to pay for such improvements. It was held, however, that the city was primarily liable to those with whom it contracted to make them, reimbursing itself later by a special assessment against the abutting property. The same court, in *City* v. *Trigg*, 47 Pac. 524, used the following language: "While the statute provides for assessing the cost of the improvement against the property benefited, the city is not limited to that method of making payment. It has been determined that this provision requiring an assessment to be made for the improvements relates to the ultimate liability therefor, and is for the purpose of raising a fund to reimburse the city for the amount paid for such improvements."

The cases cited to support these conclusions disclose a harmony of judicial sentiment upon this point, viz., that the city had power to render itself generally liable upon its contract for paving its streets. *Clark* v. *Des Moines*, 19 Iowa 221, 87 Am. Dec. 423; *City* v. *Leu* (Kan.) 29 Pac. 467; *City* v. *Leatherman*, (Ky.) 35 S. W. 625; *Fisher* v. *City*, 44 Mo. 482; *Barber, etc., Paving Co.*, v. *City*, 72 Fed. 336, 19 C. C. A. 139; *Barber, etc., Paving Co.* v. *City*, 64 Fed. 283, 12 C. C. A. 100, 29 L. R. A. 401; *Northern Pacific L. & M. Co.* v. *City*, 14 Or. 3, 12 Pac. 4; *Commercial Nat. Bank* v. *City*, 24 Or. 188, 33 Pac. 532, 41 Am. St. Rep. 854; *District of Columbia* v. *Lyon*, 161 U. S. 200, 16 Sup. Ct. 450, 40 L. Ed. 670; *Cole* v. *City* (La.) 6 South. 688; *State* v. *Commissioners*, 37 Ohio St. 530; *Ft. Dodge, etc., Co.* v. *Ft. Dodge* (Iowa) 89 N. W. 10.

It is urged that the city could not make a contract which would impose, under any contingency, the payment of money from its treasury, realized from general taxation, unless such expenditure

was first provided for in the annual appropriation bill; that, if the city could render itself generally liable upon a contract for paving, it could only do so after making the preliminary appropriation. The city as we have seen, is provided with the means of fully protecting itself against expense in the making of special improvements. Any payments made upon its contracts for paving should be paid for out of the funds realized from the special assessments; and, if the city exercise the powers given it, the general taxpayer cannot be burdened at all with the cost of the improvement. If, however, the city council fails to take advantage of the means provided to realize upon special assessments the cost of the improvement, as between the city it represents and the contractor, the consequences of the neglect should fall upon the city. At the time of making the contract for paving, it was not contemplated that the expense would be paid out of the general revenues of the city. This was not an expense or liability of the corporation, within the meaning of section 2262, Rev. Codes 1895, which had to be provided for in the annual appropriation bill, or to be defrayed therefrom. This is made apparent by the exception in the concluding sentence of section 2264, Rev. Codes 1895, which section reads: "No contract shall be made by the city council and no expense shall be incurred by any officers or departments of the corporation, whether the object of the expenditures shall have been ordered by the city council or not, unless an appropriation shall have been previously made concerning such expense, except as herein otherwise expressly provided." Following this exception are the sections providing for local improvments and contracts therefor, and special assessments for their cost, the substance of the pertinent portions of which are hereinbefore quoted. In the language of Judge Sanborn: "The conclusion is irresistibly forced upon our minds by this review of the provisions of this charter that this and like contracts for grading and paving streets that were not a part of the current expenses of the city, and were not to be paid for by the general tax levy, but through the expenditure of the funds authorized to be raised by special assessment, are expressly excepted from the restrictions and prohibitions of (section 2264) the last clause of that section." *Barber Asphalt Paving Co.* v. *City,* 19 C. C. A. 147, 72 Fed. 344. We conclude that the city had power to render itself generally liable upon its contract for paving.

The city, in this case, did not take advantage of sections 2308 to 2310, Rev. Codes 1895, and did not issue internal improvement

bonds, but, on the contrary, issued to the contractors, in payment for their work and material, warrants in the form of the ones in suit; and it is now insisted that, by the acceptance of these warrants in payment, the contractors and their transferees assented that all right of recovery thereon should be, and that it is, limited to the funds named in the particular warrants, and against which they were drawn, and that plaintiff can only recover by showing money in these funds realized from special assessments not otherwise appropriated. The stipulation in the contract "that all payments made by the party of the second part shall be made by city warrants to be issued on behalf of this contract and shall be accepted by the parties of the first part at par value" in no way binds the contractors to look exclusively to a fund realized from special assessments for their pay. The stipulation to take city warrants at par would indicate, at most, that there might be some delay in realizing upon them. When the warrants were accepted by the contractors, directing payment out of Front street paving funds in the treasury not otherwise appropriated, for account contract paving Front street, and similar orders for their work on Northern Pacific avenue, drawn on Northern Pacific avenue paving funds, they had a right to assume that the reference in the warrants to particular funds was for the convenience of the officers handling the funds and keeping account thereof, and not as varying or limiting the city's liability upon its contract with them. *Clark* v. *City,* 19 Iowa 222, 87 Am. Dec. 423. The city had received full performance of the contract, and was enjoying the fruits of it, and could not claim at such time that the acceptance of the warrants constituted a new contract, or relieved it from any antecedent liability it had subjected itself to. The contractors had knowledge of the statute authorizing special assessments, and, doubtless, in accepting the warrants drawn in this form, sought to obtain the added assurance of payment which an assignment of this fund would give.

We will assume, for the purposes of this case, that the contract for paving, and the language of the city warrants delivered in fulfillment of it, were understood by the parties, and were intended to postpone the redemption of the warrants until the special assessments could be made and collected. It follows from this assumption that the issuance and delivery of the warrants operated as an assignment of so much of these funds as was necessary to retire them. *Swanson* v. *City* (Iowa) 91 N. W. 1052, 59 L. R. A. 620; *Ft.*

*Dodge, etc., Co.* v. *City* (Iowa) 89 N. W. 11. Immediately and as fast as moneys were covered into the particular funds from these special assessments, the warrant holders became entitled to them, in the order of the presentation of the warrants, and until the moneys were in fact paid out in retirement of the warrants the city held them as trustee for the warrant holder. The contractors, by accepting warrants payable out of these special funds, had a right to rely upon the city's performing with all expedition the acts necessary to create the fund out of which the warrants would be retired. The contract duty of the city, under the construction we have assumed, was not only to make proper assessments, but to put in operation the proper machinery to collect these assessments, and to see that the money was actually collected within a reasonable time after the issuance of the warrants; that such moneys, when collected, should be held in the special funds, and paid out only upon the warrants issued against these funds; and that the moneys would not be diverted to any other purpose. *Commercial Nat. Bank* v. *Portland* (Or.) 33 Pac. 532; *Northern Pacific, etc., Co.* v. *Portland* (Or.) 12 Pac. 4; *Reilly* v. *City,* 112 N. Y. 42, 19 N. E. 508; *Cumming* v. *Mayor,* 11 Paige 596; *Barber* v. *City,* 64 Fed. 283, 12 C. C. A. 100, 29 L. R. A. 401; *Allen* v. *City* (Iowa) 77 N. W. 532, 539. If this duty had been fully performed by the city, this action never would have been commenced or made necessary.

As to the $500 warrant in suit, drawn against the Northern Pacific avenue paving account, the evidence shows that the city did not fulfill its obligations hereinbefore pointed out. It was stipulated that all proceedings for the imposition of special assessments for Northern Pacific avenue paving were regularly taken. The contract for paving was entered into before the cost was apportioned against the properties. Section 2280, Rev. Codes 1895. The assessment was for a sum sufficient to pay all warrants issued under the contract, and all other costs of the improvements. The evidence discloses that on November 29, 1895, the assessments unpaid amounted to $2,550.17. These were certified to the county auditor for collection. This amount, with penalty and interest, was collected, and there was remitted to the city treasurer $3,206.45. There was but $219.17 in this fund when suit was commenced. This shows a diversion of this fund by the city, and, as to the warrant in suit, to hold that the city is not liable would be equivalent to saying that it could violate its contract with impunity, and at the same time retain

its fruits. Such is not the law. Substantially the same condition is shown as to the Front street paving account. On November 26, 1895, the delinquent assessments certified to the county auditor amounted to $4,029.45. All the balance of these assessments must have been paid before that time. Of this there was collected and remitted to the city treasurer $3,424.59. The date of this remittance is not shown. The small balance of this fund uncollected should have been realized by a sale of the properties against which the assessment was made, and this within a year after delinquency. Section 2295, Rev. Codes 1895. If any portion of these assessments remained unpaid, this fact and the amount uncollected could have been shown, and by the defendant city. The evidence and appellant's admissions disclose that the duty to collect had been imposed upon and undertaken by the city, and the presumption, if any arising from such showing, is that the duty has been performed. Subdivision 15, section 5713c, Rev. Codes 1899; 22 Am. & Eng. Enc. Law 1267.

But the proofs do not stop here. It appears that the treasurer credited into the Front street paving account and the Northern Pacific avenue paving account, respectively, the sums realized from the special assessments. The assessments payable into each account were required to be, and in fact were, in amounts sufficient to pay all warrants issued against the fund to be created by them. The officer having custody of the city's money, and upon whom rested the duty of keeping these accounts, disclosed a credit in each of them of an amount more than sufficient to pay all warrants drawn against them, including the ones in suit. These credits are not out of proportion to the gross amount of the special assessments. The presumption is that the treasurer performed his legal duty, and credited into these accounts moneys primarily received in payment or satisfaction of the assessments made for the benefit of these funds. *Delaney* v. *Schuette* (Wis.) 5 N. W. 796; *Nofire* v. *United States*, 164 U. S. 657, 17 Sup. Ct. 212, 41 L. Ed. 588; *U. S. Bank* v. *Dandridge*, 12 Wheat. 64, 6 L. Ed. 552; *Rankin* v. *Hoyt*, 4 How. 324, 11 L. Ed. 996; *Huey* v. *Van Wie*, 23 Wis. 613; *Floyd* v. *Day*, 19 Ind. 450.

When plaintiff had gone thus far with its proofs, and shown that each of the funds against which the warrants in suit were drawn had been credited with a sum sufficient with which to pay its warrants and all others drawn against the funds, respectively, a *prima*

*facie* case was made. out.  *Hockaday* v. *Commissioners* (Colo. App.) 29 Pac. 290.  The plaintiff became immediately entitled to the moneys assigned to him by the warrants, and the city had no right to divert them elsewhere or to any other purpose.  The evidence that there was no money in either fund, excepting $219.17 in the Northern Pacific avenue account, showed a diversion of the money in said accounts from the purposes of their creation, and a conversion of plaintiff's money in violation of trust, rendering the city liable.  *Potter* v. *City* (Wash.) 56 Pac. 394; *Hockaday* v. *Commissioners* (Colo. App.) 29 Pac. 291; *City* v. *Leu* (Kan.) 29 Pac. 467; *Commercial Nat. Bank* v. *City* (Or.) 33 Pac. 532; *Frush* v. *City*, 6 Or. 281; *Northern Pacific Lumber Co.* v. *City* (Or.) 12 Pac. 4; *Valleau* v. *Newton Co.*, 72 Mo. 593; *Id.*, 81 Mo. 591; *Chaffee* v. *Granger*, 6 Mich. 51; *Lansing* v. *Van Gorder*, 24 Mich. 456; *Eilert* v. *Oshkosh*, 14 Wis. 637; *Hohl* v. *Town*, 33 Wis. 324, 21 Am. & Eng. Enc. L. 23.  The case is analogous to those where a city had agreed to pay out of a fund to be raised by special assessment, and then, by negligence of its officers or some defect in legislation, the fund was not realized after the city had reaped the benefit of its contract and obtained the improvement contracted for. *Reilly* v. *City*, 112 N. Y. 30, 19 N. E. 508; *Ft. Dodge, etc., Co.* v. *City* (Iowa) 89 N. W. 7, 11; *Stevens* v. *City* (Wash.) 39 Pac. 266; *Denny* v. *City*, 79 Fed. 720, 25 C. C. A. 164; *Stevens* v. *City* (Wash.) 44 Pac. 541; *McEwan* v. *City* (Wash.) 47 Pac. 433; *Eidemiller* v. *City* (Wash.) 44 Pac. 877; *Cumming* v. *Brooklyn*, 11 Paige 599; *Baldwin* v. *Oswego*, 1 Abb. Dec. 62; *Smith* v. *Buffalo*, 44 Hun. 156; *Wilder* v. *City*, 87 Fed. 843, 31 C. C. A. 249; *Warner* v. *City*, 167 U. S. 467, 17 Sup. Ct. 892, 42 L. Ed. 239; *Barber, etc., Co.* v. *Denver*, 72 Fed. 339, 19 C. C. A. 139; *Barber, etc., Co.* v. *Harrisburg*, 64 Fed. 283, 12 C. C. A. 100, 29 L. R. A. 401; *Bucroft* v. *City*, 63 Iowa 646, 19 N. W. 807; *Hitchcock* v. *Galveston*, 96 U. S. 350, 24 L. R. A. 659; *Scofield* v. *City*, 68 Iowa 695, 28 N. W. 20; *Bill* v. *City* (C. C.) 29 Fed. 344; *City of Chicago* v. *People*, 56 Ill. 327; *Maher* v. *City*, 38 Ill. 266; *Fisher* v. *City*, 44 Mo. 482; *Portland, etc., Co.* v. *City* (Or.) 22 Pac. 542; *Allen* v. *City*, 35 Wis. 403; *Eilert* v. *City*, 14 Wis. 637.  In such cases the city is liable, notwithstanding the contract under which the warrant issued expressly stipulated that the holder could not call upon the city to redeem, but should be limited in his recovery to the special fund again which the warrant was issued.  *Barber, etc., Co.* v. *Den-*

*ver,* 72 Fed. 36, 19 C. C. A. 139; *Barber, etc., Co.* v. *Harrisburg,* 64 Fed. 283, 12 C. C. A. 100, 29 L. R. A. 401; *Bank* v. *Portland* (Or.) 33 Pac. 532; *City* v. *People,* 56 Ill. 334. The case of *Redmon* v. *Chacey,* 7 N. D. 234, 73 N. W. 1081, is not an authority opposed to this conclusion. The facts distinguish it. The warrants there were required, by the law authorizing their issue, to be drawn against the special fund, and the warrants were not drawn by the county commissioners, who alone have authority to bind the county generally in such matters. The very point we have here illustrated is that the general incorporation act did not require these contractors to be paid by warrants drawn against the paving fund, or out of the paving fund at all; and the city council, who made the contract for paving, had power thereby to bind the city generally for this, among other reasons, that the law did not limit their authority in drawing warrants to the contractors to restrict their payment out of the special fund. The contract with plaintiff's assignors, though made, as all corporate contracts must be, through the agency of the city council, yet was, when made, the contract of the city. *Lansing* v. *Van Gorder,* 24 Mich. 456. When the paving contractors, therefore, accepted warrants drawn against the paving fund, there was no statutory requirement that they should be limited to this fund, in all events, for their pay. But in so far as they were so limited, it was by the contract and acceptance of these warrants so worded in fulfillment thereof; and in reliance upon an implied promise of the city to promptly take the needed steps to create the fund out of which they were to be paid.

The city cannot, more than a private individual, take advantage of its own wrong to escape a contract obligation. The distinction made by this court in *Redmon* v. *Chacey,* when it declared the warrants there considered as not county obligations, because issued, "not by the county commissioners, but by the drain commissioners —a board whose authority in that line is limited to dealing with the drainage fund, and that cannot bind the county generally"— is well illustrated by Judge Cooley in *Lansing* v. *Van Gorder, supra,* when he said: "It is contended on the part of the city that in respect to such local improvements, and the assessments to pay for the same, the common council did not act for the whole city, but as agents, on the one side, for the owners of the property benefited, in making the contract for the work, and supervising its construction, and on the other for the contractor, in levying, col-

lecting, and paying over the assessment; and if the common council are guilty of any wrong to their principals, or any misappropriation of moneys, the city cannot be held liable therefor. We think this argument wholly mistakes the position of the council. The council is the legislative body of the city, and it is acting as such not less when levying a special assessment than when imposing the ordinary taxes. The improvement does not belong to the parties assessed, but to the public at large, and it is made from considerations of the general benefit. The cost is levied upon the adjacent property because such property receives the larger portion of the benefit from enhanced values, and therefore is thought to embrace the proper limits for an assessment district; but if the whole city had been made such district, the character of the work, its use and proprietorship, so far as there can be said to be any, would have been the same as now. So far are the owners of the land taxed from being principals of the council which taxes it, that they are not even suffered to decide for themselves that they will have the improvement; but the council, looking to the needs of the whole city, orders it, and then imposes the cost upon a few, though the advantages of the street are received by all. The few thus taxed may well deny the agency of those who are first set over them by the votes of all, and who then tax them for the benefit of all. When the parties assessed have paid the tax levied upon them, they have performed their whole duty, and discharged their entire liability. The duty then devolves upon the city, through its common council, to see that the money is properly applied."

It is contended by appellant that, in making proof of the book entries credited to the Front street paving fund, $4,217.54 thereof appears as "appropriated from street and bridge fund," $2,411.89 as "transferred from North Broadway fund," and in the credit to the Northern Pacific avenue account is an item of $3,144.82, "appropriated from street and bridge fund"; that the form in which these entries appear upon the books negatives the idea that these sums could properly or legally be credited to these special accounts, and negatives the idea that these sums were realized from the special assessments for the paving of these streets; that this evidence, having come in as part of plaintiff's showing, relieves the city of the burden of proving that all the assessments were not collected; and that without these credits the funds would not be sufficient to pay all warrants drawn against them. It is also claimed

that under section 2183, Rev. Codes 1895, all moneys received on any special assessment must be held by the treasurer as a special fund, to be applied to the payment of the improvement for which the assessment was made, and that such money can be used for no other purpose; that, giving this statute effect, there was no authority in law, and none was in fact shown, whereby the treasurer could divert $2,411.89 from the North Broadway paving fund to the Front street paving fund; and that the credits appearing as appropriations from street and bridge fund cannot be considered, because, under sections 2262, 2263, Rev. Codes 1895, as interpreted by this court in *Engstad* v. *Dinnie,* 8 N. D. 1, 76 N. W. 292, no appropriation by the city council is shown, nor any authority in the council to make such appropriation.

Appellant's assignments of error upon these points are not well taken. These amounts are shown as credited into the special accounts. The treasurer, in the performance of his official duty, has so credited them. No explanation is offered as to the language in which the items are credited to this fund. The aggregate credited as "appropriations from bridge and street fund" is made up of many entries. From month to month, during the period of collection of these assessments, items are credited to these accounts in the language, "appropriation from bridge and street fund," ranging in amounts from $5.20 to $1,816.19. The fact that the credits to these paving funds appear on the books in this language does not negative the idea that the amounts were properly credited into these special accounts, or that they were not primarily received from the special assessments upon the property abutting upon Front street or Northern Pacific avenue. The moneys collected by the city treasurer from time to time, and from various sources, may have been carried, for his own convenience, in the account designated as "Bridge and Street Fund," and then, at stated intervals, the amounts belonging to the various funds credited to them as appropriations from bridge and street fund, thus indicating, under the method of bookkeeping, how the amounts collected could be traced on the books to their original sources. But it is idle to speculate upon this point. If these amounts so credited to the special accounts were improperly credited, it was the duty of the city to show it. The plaintiff had shown by the books of the treasurer a credit to these funds amply sufficient to pay his warrants. This credit was made up of items entered by the treasurer at intervals

over a long period of time. The funds in which these credits were shown were created and maintained for the sole purpose of keeping accounts of money received and disbursed from the assessments. which brought them into existence. No reason can be assigned for moneys being credited into these accounts which were not primarily received from assessments of the property in the improvement district after which they were named. But on appellant's assumption that these moneys were appropriated from moneys raised through general taxation, it was not necessary for plaintiff to show that an appropriation from the bridge fund was made by the city council, or that it had authority to make such appropriation as he contends. The fact that the transfers were made by the city treasurer while acting in the 'discharge of official duty raised the presumption that they were legally made in pursuance of authority. Lawston, Presumptive Ev. 60, 67. And if an appropriation by the city council was necessary as a preliminary to such transfer of funds from one account to the other, the fact that. the transfer was officially made by the custodian would give rise to the presumption that the necessary action of the city council had been taken, and would cast the burden of proof on the one disputing the legality of the transfer. *Bofire* v. *United States,* 164 U. S. 657,. 17 Sup. Ct. 213, 41 L. Ed. 588; *United States Bank* v. *Dandridge,* 12 Wheat 64, 6 L. Ed. 552; *Delaney* v. *Schuette,* 49 Wis. 366, 5. N. W. 796; *Barber, etc., Co.* v. *Denver,* 72 Fed. 341, 19 C. C. A.. 139; *Knox County* v. *Bank,* 147 U. S. 91, 13 Sup. Co. 267, 37. L.. Ed. 93.

The answer of the city in this case was a general denial. The proof discloses that for seven years the warrants in suit have remained unpaid. No claim is made that the contractors failed in any particular to perform their contract. The proof shows compliance upon their pa t. The city has profited by the labor, material furnished, and improvement made, while the very time that has been permitted to elapse since the issuance of the warrants in suit is a breach of the city's contract to create a fund for the retirement of the warrants, and to retire them without delay. If, then,. any moneys credited to either of these funds were improperly so credited—if the sufficient amount to retire these warrants once in these accounts was not improperly diverted to other purposes—it was within the power of the city, and it was its duty, to so show. *Hockaday* v. *Commissioners* (Colo. App.) 29 Pac. 291. If general.

funds of the city were put into these special accounts without authority of the council, or if the council lacked authority to make such appropriations, these facts were peculiarly within the knowledge of the defendant, and are new matter which should have been affirmatively pleaded by the city in its answer. *Nash* v. *St. Paul*, 11 Minn. 174 (Gil. 110) ; *Barber, etc., Co.* v. *Denver,* 72 Fed. 341, 19 C. C. A. 139.

Nor is the appellant's assignment as to the credit from the North Broadway fund on any better foundation. Section 2183, Rev. Codes 1895, prevents the use of special funds for a purpose outside that of their creation. But a city is permitted to contract for the payment of special improvements from money in its treasury, relying for its reimbursements upon the special taxes when collected. Under this method of paying for improvements, the city controls and owns the moneys collected from the special assessments, and can apply them to any general account of the city without violating the mandate of section 2183, Rev. Codes 1895. The object and purpose of the statute is fulfilled when the cost of the improvement is paid for by the property benefited by it, and the special fund is as much devoted to the accomplishment of this purpose when taken by the city in payment of moneys already advanced by it on the improvement as if the assessment fund were paid directly to the contractor.

The city offered no evidence to show under what arrangement or how the sum of $2,411.89 happened to be in the North Broadway paving fund, or the occasion for its being transferred to the Front street paving fund. There is no showing that all warrants issued against the North Broadway paving fund had not been paid ; that these moneys were needed in that account. The purpose of the statute in preventing these moneys being used for other than North Broadway paving may have been accomplished. This balance may have been in the fund because of penalties and interest collected on delayed payments. It may have represented moneys advanced by the city from its general funds to pay upon the contracts for improvement of North Broadway. It may have represented moneys that had been borrowed temporarily from the Front street paving fund for the use of North Broadway fund. However the balance came to be there, the same presumptions arise from the fact that its transfer into the Front street account, and that it was legally and rightfully transferred, as are indulged in favor of the entries concerning appropriations from the bridge and street fund. If this

·sum was an unlawful credit, it was for the city to show, and not
to leave the matter to rest simply on the presumptions to which
the entries give rise.

Appellant insists that there was no evidence in the case show-
ing or tending to show a diversion or misapplication of funds in
these special accounts; that the burden of proof, was on plaintiff .
to show such diversion; that the presumption in favor of a
public official performing his legal duty, when indulged in favor
of the defendant, would, *prima facie,* at least, show that the de-
pletion of the fund was a legal and authorized one; that the pre-
sumption that moneys were properly credited in these accounts
would be offset by the presumption that the absence of funds was
legally produced. This argument is well answered by the Supreme
Court of Colorado in the Hockaday case, *supra,* where it was said:
"It is shown that the amount of the credits to the road fund in the
years 1883 to 1886, both inclusive, exceed, in the aggregate, the
outstanding warrants and warrants drawn against it, some $19,000,
and that in each of the years the available road fund exceeded by
quite an amount the warrants drawn; hence, if the fund had been
entirely devoted to the purposes of its creation, and there had been
no diversion or misapplication of the fund, it was at all times
solvent, and with money in the treasury to pay all warrants drawn
during the year. * * * No proof whatever was offered on
the part of the defense to explain or show to what use the fund
had been applied, and why it was not on hand. *Prima facie,* a case
was made, sustaining the allegations in the complaint, that required
defendant to rebut. No effort was made to do so. Counsel evidently
relied upon the supposed invalidity of the warrants, and did not
think it necessary to interpose other defenses. The figures con-
tained in the stipulation showing that there should have been a
large balance of the special fund in the treasury,—the same docu-
ment stipulating that there was none—*prima facie,* at least, estab-
lished the allegations of the complaint of diversion and misapplica-
tion of the fund to other purposes by the county officials." The
money, when credited into this account, was thereby, and by the
fact of entry, immediately dedicated to the payment of these war-
rants. The delivery of the warrants was an equitable assignment of
the fund to their holders, and, as against the warrant holders, the
moneys could not be retransferred to other accounts or to other
purposes, except in violation of the city's contract, evidenced by

the warrants. The presumption that the money was legally re-transferred to other accounts cannot be indulged, because the owner of the warrants did not consent to an abandonment of its rights thereto, and the presumption cannot be indulged against countervailing proofs.

Appellant has assigned for error twenty-six rulings of the trial court, which, upon argument, he grouped under three heads. Rulings in the admission of evidence we will not consider in detail in this opinion for the reason that no motion for a new trial was made in the court below. The evidence, free from legal objection, is sufficient to sustain the verdict, and a consideration of errors which could only be reviewed on motion for a new trial can serve no good purpose; appellant having waived, by the form of his motion, any right to a new trial herein. *Bragg* v. *Ry. Co.,* 81 Minn. 130, 83 N. W. 511; *St. Anthony Falls Bank* v. *Graham,* 67 Minn. 318, 69 N. W. 1077.

Appellant's objection to the introduction of any evidence in the case, for the alleged reason that the complaint did not state facts sufficient to constitute a cause of action, without pointing out in what particular counsel considered it insufficient, was properly overruled. This form of objection has been repeatedly condemned. *Bowman* v. *Eppinger,* 1 N. D. 21, 44 N. W. 1000; *Chilson* v. *Bank,* 9 N. D. 98, 81 N. W. 33; *Schweinber* v. *Elevator Co.,* 9 N. D. 113, 81 N. W. 35.

The argument that plaintiff cannot recover in this form of action; that, to recover, it must show money in the special fund applicable to the payment of its warrants; and that mandamus is the remedy in case the treasurer refuses to pay over moneys applicable to the retirement of the warrants—is answered in this: The warrants were city warrants. When the money was collected by the city, plaintiff was entitled to it, and failure to pay it over was a breach of the contract by the city. Neither the law, the contract, nor the warrants limited the right of recovery absolutely and in all events to the special fund; and, even if it did, the city could not convert the fund, and urge this fact in defense of a suit on the warrants. Mandamus is not the remedy in a case where both the law and the contract restrict the recovery within the accounts realized on special assessment, when, as in this case, by fault of the city there is no money in the fund to be paid over. *Hockaday* v. *Commissioners* (Colo. App.) 29 Pac. 290.

Appellant tried its case upon the theory that plaintiff could not prove a cause of action. It has rested its right on appeal upon the proposition that the facts alleged and proven by plaintiff were insufficient to sustain the verdict. By not uniting with its motion for judgment notwithstanding the verdict the request for alternative relief by new trial, it in effect says it could make no better showing if a new trial was ordered. *Bragg* v. *Ry. Co.,* 81 Minn. 130, 83 N. W. 511; *Aetna Indemnity Co.* v. *Schroeder* (N. D.) 95 N. W. 436; *Richmire* v. *Andrews & Gage,* 11 N. D. 453, 92 N. W. 819.

We find no error in the record. The verdict was properly directed for the plaintiff. The judgment of the district court is in all respects affirmed. All concur.