FREDERICK E. KREATZ v. ST. CLOUD SCHOOL DISTRICT.

January 24, 1900.

Nos. 11,930—(194).

Municipal Corporation—Building Committee—Repair of Heating Plant.

In an action to recover from defendant school district the value of repairing a heating plant injured by the action of frost, the question of the authority of defendant's officers and agents and its liability considered. *Held* (1) that the court erred in granting defendant's motion for judgment notwithstanding the verdict; (2) that, the defendant having moved for a new trial in case the motion for judgment be not granted, the judgment be reversed, with leave to defendant to apply for a new trial.

Action in the district court for Stearns county to recover $311.54 for labor and materials furnished. The case was tried before Searle, J., and a jury, which rendered a verdict in favor of plaintiff for the amount demanded. Thereafter the court made an order granting defendant's motion for judgment in its favor notwithstanding the verdict; and from a judgment entered pursuant to such order, plaintiff appealed. Reversed.

*Taylor & Jenks,* for appellant.

*George W. Stewart,* for respondent.

LEWIS, J.

The complaint in this action alleges that plaintiff furnished, at defendant's request, certain labor and material for the repairing of a certain steam plant in one of defendant's school buildings, which labor and material were of the reasonable value of $311.54. The answer denies that the labor and material were furnished at defendant's request, and admits that said school building was owned by defendant, but denies that it was controlled by it during said time, but states that the building was controlled by, and occupied by, one Heimann, who was then, under a contract from defendant, engaged in erecting the same; that the plaintiff had previously entered into a contract with defendant whereby plaintiff agreed to furnish for defendant a complete system of steam heating for said building, according to certain plans and specifications; and that said contract was not completed by plaintiff until after the time said labor and materials were furnished, and that the same were furnished by plaintiff in pursuance of, and in completion of, his said contract. To this answer plaintiff replied, denying all allegations of new matter, and alleging that said contract for furnishing the heating system had been completed when said labor and materials were furnished for repairing, and that the same were in no way connected with said contract.

At the close of the testimony, defendant moved the court to direct a verdict for the defendant upon the ground that plaintiff had failed to make out a cause of action. The motion was denied. The cause was submitted to the jury, and a verdict was returned for plaintiff. Thereupon defendant moved the court for judgment in favor of defendant notwithstanding the verdict, or, if that motion

be denied, that it would move for a new trial. This motion was granted, and judgment was ordered in favor of defendant against the plaintiff for the costs and disbursements of the action. Judgment was entered, and plaintiff appeals.

It appears from the charge to the jury that the court submitted the cause upon one question only, viz. whether or not the plaintiff's contract for putting in the heating plant had been completed and accepted by defendant at the time of the accident; if the plant had been accepted, the plaintiff should recover. On the contrary, if the plant had not been accepted by defendant, then plaintiff could not recover, because, under his contract with defendant, the plaintiff assumed all risks of loss resulting from accident until acceptance of the plant by defendant.

While the evidence is somewhat conflicting and indefinite, the responsibility of the accident does not rest alone upon the question of technical acceptance of the heating plant by defendant. The plaintiff must show that the accident did not occur by reason of his own negligence, even if defendant were in control of the plant at the time of the accident, and if plaintiff were still in control of the plant he cannot recover if the accident were occasioned by the negligence of the janitor. The defendant cannot be held liable unless it had assumed control of the plant at the time of the accident. If the defendant assumed control of the plant, and permitted its agents to run it, and the accident occurred by reason of the negligence of such agents, the defendant cannot escape liability because it had not formally and technically accepted the plant.

The plaintiff testified that on Monday, November 28, he called up by telephone the chairman of the building committee; that he (the plaintiff) had been running the plant several days for the benefit of the school board; that he at that time informed the chairman that, unless they put a man in charge of the plant, he would draw the water off; that he had run it as long as he cared to for the benefit of the school board; that the chairman replied that he did not care what he did with it, but that he had better see Mr. Parr before he drew it out. Plaintiff further testified that he saw Parr, but he was not permitted to state what took place between them. Parr testified that he was superintendent of schools of St. Cloud, and that, under resolution of the board, he had supervision and

direction of the janitors employed by the board; that he gave directions to janitors; denies that he gave any directions to the janitor Lacher to take charge of the new heating plant, but admits a conversation with plaintiff as follows:

"I met Mr. Kreatz [on Monday, November 28]   *   *   *   and he made the statement to me that he was about to draw the water out, or take the fire out, and let the plant get cold.   I said I hoped that would not be done; that it would be necessary for me to see certain parties before an arrangement could be made to continue the water and fire, and I would see about it."

The record shows that there was a man in the employ of the board named Tenny whose business was to superintend construction of the building under the contractor Heimann.   This man Tenny directed Heimann to secure the janitor Lacher to operate the plant.   The plaintiff took away his men on Monday, and Lacher took charge, and it was while the plant was being operated by him that the accident occurred, on the night of the 30th.   It also appears that the plant was completed on the 28th, with the exception of placing a few pieces of board under some of the radiators. It also appears that the building committee held a meeting immediately after the accident, and agreed that the repairing must be done, as it was getting late, and directed the chairman to see that it was done; that this committee was a special building committee, and had charge of the construction of the new buildings.   The secretary of the committee, a member of the board, testified that the members of the board all knew about the repairing by plaintiff. There was no acceptance of the plant by resolution of the committee or the board at any time, except as appears from the records of the board as follows, under date of February 28, 1899:

"The bill of Fred. E. Kreatz for expenses incurred in replacing radiators broken by freeze   *   *   *,  was read, and on motion of Geo. W. Stewart, chairman of the special committee on buildings, that so much of the bill as relates to the freeze   *   *   *   be rejected."

On this evidence, we are asked by respondent to sustain the judgment principally upon two grounds: First, even if the accident occurred from no fault of plaintiff, and defendant was in control of the plant, the defendant had no authority to order the repairs;

second, if the defendant did have such authority, then it conclusively appears from the evidence that the accident occurred while the plant was in charge of plaintiff, and under his contract with defendant he was responsible, and must stand the expense.

The authorities cited by counsel are not applicable. In Newbery v. Fox, 37 Minn. 141, 33 N. W. 333, is found this language:

"The doctrine of ultra vires has, with good reason, been applied with greater strictness to municipal bodies than to private corporations, and, in general, a municipality is not estopped from denying the validity of a contract made by its officers, when there has been no authority for making such a contract."

But in that case the doctrine of estoppel was not applicable. The contract had been entered into without authority, but the plaintiff had proceeded with his work notwithstanding he had been warned that his contract was void. In the case of Young v. Board of Education, 54 Minn. 385, 55 N. W. 1112, a school-district treasurer, without authority, had borrowed $205, to complete the building of a school house, the amount of money raised for that purpose being insufficient in that amount. In an action to recover the amount from the district, it was held that no estoppel or ratification could be inferred from the fact that it retained and enjoyed the benefit of the expenditure, because it was inseparable from its property, the district having no option to reject the improvement caused by so much money being used in the payment of labor and material. Neither is this case within the rule of ultra vires, as applied in Bazille v. Board of County Commrs., 71 Minn. 198, 73 N. W. 845; nor is the law applicable as applied in the case of Leland v. School District, 77 Minn. 469, 80 N. W. 354. In that class of cases the statute in express terms defines what shall constitute a contract, and it cannot be varied, and there is no possible application of the doctrine of estoppel. But, in the case we are considering, granted that the chairman and the committee had no authority to order the repairing, yet if it was done at their request and with knowledge on the part of the committee and members of the board, and the work was of such notable character, and continued for such length of time, and under such circumstances, as to raise the presumption that it was with the common consent of the district, then there

would arise an obligation to pay for it. Andrews v. School District, 37 Minn. 96, 33 N. W. 217.

Second. As before remarked, the evidence as to who was responsible for the injury is indefinite and conflicting, and, for our present purpose, it may be conceded that upon the evidence the court would have been justified in granting defendant a new trial. But under the rule established in Cruikshank v. St. Paul F. & M. Ins. Co., 75 Minn. 266, 77 N. W. 958, followed in Marquardt v. Hubner, 77 Minn. 442, 80 N. W. 617, judgment notwithstanding the verdict should only be granted when it is clear that the cause of action or defense put upon the record did not, in point of substance, constitute a legal cause of action or defense. In this case, the evidence lacking to fix the responsibility upon the defendant may be supplied by a new trial. If the building committee in fact set into operation the action of its agents, which resulted in the janitor taking possession of the plant and causing the injury, the defendant could not compel plaintiff to repair under his former contract. The provisions in that agreement, as to taking the risk of accidents, and completing the plant to the satisfaction of the architect, do not apply to acts performed or caused by defendant. The building committee had express authority to cause the construction of the building and the heating plant. It was the only representative of the board, and its chairman its representative. Action by that committee, or its active members, in taking possession of the plant and so causing the injury, would bind the defendant, at least to the extent of removing the responsibility from the plaintiff. Such action would require no ratification by defendant. It was within the limits of their general powers of construction and supervision.

The defendant having moved for a new trial in case the motion for judgment be not granted, it is ordered that the judgment be reversed, with leave to defendant to apply to the court below for a new trial.

COLLINS, J.

I concur in the conclusion, upon the ground that, under the rule laid down in Cruikshank v. St. Paul F. & M. Ins. Co., 75 Minn. 266, 77 N. W. 958, the court below should have granted a new trial,

instead of ordering judgment for defendant notwithstanding the verdict.