WALLACE F. BRAGG v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

August 6, 1900.

Nos. 12,147—(235).

### Personal Injury—Judgment notwithstanding Verdict.

Laws 1895, c. 320, does not authorize an order for judgment notwithstanding the verdict when there is evidence reasonably tending to support such verdict.

### Same—Evidence.

Evidence considered, and *held*, that the trial court was not justified in ordering judgment in favor of the defendant notwithstanding the verdict in favor of the plaintiff.

### Same—Waiver of Motion for New Trial.

The defendant, having moved for judgment without having, in addition thereto, asked for a new trial in the alternative, waived the right to do so.

Action in the district court for Ramsey county to recover $5,000 for personal injuries. The case was tried before Otis, J., and a jury, which rendered a verdict in favor of plaintiff for $950. Pursuant to an order granting a motion for judgment notwithstanding the verdict, judgment was entered in favor of defendant, from which plaintiff appealed. Reversed.

*Oscar Hallam*, for appellant.

*F. W. Root*, for respondent.

LOVELY, J.

This appeal is from a judgment ordered for defendant notwithstanding a verdict in favor of plaintiff, under Laws 1895, c. 320.

Plaintiff recovered damages for injuries sustained while in the act of alighting from a passenger car at Western Avenue, in the city of St. Paul, by the alleged negligent starting of the train while he was stepping from the same. The conceded facts show that defendant and the Chicago, St. Paul, Minneapolis & Omaha Railway Company operated their lines over the same tracks from St. Paul to

[1] Reported in 83 N. W. 511.

Mendota; also, that on 'the afternoon of the day of the injury there was a difference of but a few minutes in the leaving time for St. Paul, at Mendota, of the passenger trains of both companies. From the latter fact the confusion has undoubtedly arisen which led to the manifest error of the trial court in ordering the judgment appealed from. No particular prominence at the trial was given to the claim that the plaintiff was not upon one of defendant's trains. Other questions which were hotly contested were apparently considered of more importance. A careful perusal of the evidence shows that defendant's counsel made no suggestion during the trial that there was a mistake as to the identity of the train on which plaintiff was a passenger, nor was the plaintiff, or the other witness who claimed to be with him at the time of the alleged injury, asked "whether he knew that he was on a train of defendant's road, or might be mistaken as to that fact, or whether he was not upon a train of the other company," and in the charge of the learned trial court no particular stress was placed upon this phase of the case; but, after verdict and critical examination of the record by counsel for defendant, it was insisted, on motion for judgment before the court below, that there was no evidence in the case that plaintiff was on defendant's train, and it was argued here that the testimony upon this contention was as strong in its probative force to show that plaintiff received his injuries from the Omaha Company as from the defendant's servants, in the alleged untimely starting of their train. In the memorandum of the learned trial court, filed upon the order directing judgment for defendant, the following statement of the evidence upon this issue very correctly summarizes the same:

"Plaintiff says that he went to Mendota in the afternoon on a line of railway of defendant from St. Paul, through Mendota, southerly, and it is perhaps inferable that he went on one of defendant's trains. He says that he came back on the same day, leaving Mendota about six o'clock p. m. on the regular train. Another witness testifies that plaintiff left 'after six o'clock,—some time around six o'clock.'"

It is conceded by counsel for defendant that the above is an accurate statement of the facts. In addition the trial court further adds:

"This testimony, standing alone, raises a presumption that plain-

tiff returned on defendant's 6:05 p. m. regular train; such presumption being a matter of inference only, and not resting on any direct testimony as to the ultimate fact."

It seems obvious that the trial court misapprehended the effect of this evidence. The statement of plaintiff that he went to Mendota on defendant's line admits of no misconception; that he returned on the regular train, stated immediately thereafter, and in close and intimate connection therewith, conveys but one meaning, and it is difficult to see how it could well be misunderstood, particularly in view of the fact that no significance was attached to this point on the trial. The suggestion that the evidence showed that another road (the Omaha) occupied and used the same tracks from St. Paul to Mendota; that their leaving time from Mendota for St. Paul was in very close proximity to that of the defendant's train; also, that the conductor of the Milwaukee Company stated that he did not collect cash fares from any passenger between Mendota and St. Paul, while the plaintiff stated positively that he paid a cash fare to the conductor of his train, whom he could not identify,— raises, of course, an issue of fact, to be determined in the usual way, and upon the verdict for plaintiff a careful review of the record might have justified the trial court in setting aside the verdict and in granting a new trial, in the exercise of judicial discretion, yet in no view of the law would it justify the court below in determining the issuable facts involved, and ordering judgment against the verdict. The testimony of plaintiff that he went to Mendota on defendant's line, and returned on the regular train, seems to us to furnish substantial evidence of such facts, rather than a legal presumption or inference thereof, and the learned trial court has confounded what is understood to be presumption of fact with evidence of fact. "It is elementary that a presumption is not the fact itself, but the legal conclusion attached to it." 1 Greenleaf, Ev. § 14. This is a very elementary distinction, but it does not seem to have impressed the trial court with sufficient force in his disposition of this matter.

The views of this court with reference to the scope and effect of Laws 1895, c. 320, which authorizes an order for judgment notwithstanding the verdict, seem to be understood. In no case in this court has it been held that such statute authorized either the trial

court or this court in setting aside a verdict to order a judgment against such verdict, where there was evidence tending to support the same.

It was suggested upon the argument that the object of those who secured the passage of this statute was to vest such authority in the courts of this state, and occasional remarks during arguments of counsel in other cases display an undue disposition to seek for the meaning of a statute in the objects of those who promoted its enactment. This is clearly unsound, for no such source of information as to the legislative intent, which controls in such cases, has the sanction of reason or authority. The proper construction of a statute must be found in the general necessity which induced its passage; the language of the act itself; reasonable views, perhaps, of public policy; the ends to be subserved; and, withal, the wholesome constraint of the constitution. These are the potent elements which constitute the legislative purpose, and affect its construction by the courts; but the individual intent of those who draft bills for legislative consideration, or advocate their passage, whether the motive be salutary or sinister, is not to be thought of in such connection. And if it clearly appeared that the statute referred to required the courts, in review of verdicts, to decide upon the weight of testimony, and to order judgment upon such decision, this act would be in plain violation of that portion of our fundamental law which declares that "the right of trial by jury shall remain inviolate." The familiar canon which requires a presumption in favor of the constitutionality of legislative action has led this court in previous cases to attempt a construction of this statute in harmony with the organic law. Cruikshank v. St. Paul F. & M. Ins. Co., 75 Minn. 266, 77 N. W. 958; Marquardt v. Hubner, 77 Minn. 442, 80 N. W. 617; Kreatz v. St. Cloud School Dist., 79 Minn. 14, 81 N. W. 533.

It follows that the judgment appealed from should be reversed. Inasmuch as the defendant did not ask for a new trial in connection with its motion for judgment, it has waived that privilege. Marquardt v. Hubner, supra. And it is ordered that the judgment of the lower court be set aside, with direction to enter judgment in

favor of the plaintiff for the amount of the verdict, with interest and costs to be taxed.

Judgment reversed.