THOMAS HARTMAN v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

January 11, 1907.

Nos. 14,893—(109).

**Brakeman—Negligence.**

  Action to recover damages for injuries received by the plaintiff while coupling an air hose by reason of the alleged negligence of the head brakeman in not giving the proper signal to prevent the engine from coming against the cars while the plaintiff was between them. *Held*, that the verdict, to the effect that the head brakeman was guilty of

[1] Reported in 110 N. W. 102.

negligence which was the proximate cause of the plaintiff's injury, and that the plaintiff was not guilty of contributory negligence, is sustained by the evidence.

Action in the district court for Ramsey county to recover $25,000 for personal injuries. The case was tried before Brill, J., and a jury, which rendered a verdict in favor of plaintiff for $10,500. From an order denying defendant's motion for judgment notwithstanding the verdict, or for a new trial, defendant appealed. Affirmed.

*A. H. Bright* and *Munn & Thygeson*, for appellant.

*Sheehan & Keefe,* for respondent.

START, C. J.

The plaintiff was a brakeman in the employ of the defendant on one of its freight trains, and on January 2, 1906, while coupling the air hose between some freight cars, he was knocked down and the wheels of one car ran over his right leg, crushing it so that it had to be amputated some seven inches below the knee. He brought this action to recover damages for the loss of his leg on the ground that his injury was caused by the negligence of the defendant. The specific act of negligence alleged in the complaint was that the defendant and its other employees engaged in the operation of the train, knowing that the plaintiff was between the cars engaged in making such coupling, negligently, without any warning to him or signal from him so to do, backed the engine against the cars, whereby he was thrown down and the wheels of the car ran over his leg, necessitating its amputation. The answer admitted that the plaintiff was injured, but denied the other allegations of the complaint. Verdict for the plaintiff in the sum of $10,500, and the defendant appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial.

The assignments of error are to the effect that the trial court erred in denying the defendant's motion for a directed verdict and its subsequent motion for judgment.

1. The first contention of the defendant to be considered is that the evidence, taken in connection with the instructions of the trial court, shows no negligence on the part of the defendant which was the proximate cause of the plaintiff's injury. It appears from the evidence that the train crew, consisting of the engineer, the fireman, the head brake-

man, and the plaintiff, were engaged at the time the plaintiff was injured in doing some switching at the town of South Haven, this state; that shortly before the accident all the cars which were to go in the train, except one, were on the main track, and the engine and the other car were at or near a switch, several car lengths away, ready to back down and couple on to them; that all of the air hose couplings had not been made; and that the plaintiff went between two of the cars to make such couplings when the engine and car backed down, struck the standing cars, set them in motion, whereby he lost his leg.

It further appears from the evidence on behalf of the plaintiff that before he went between the cars to make the coupling he told the head brakeman that he was going to do so, and that, just as he stepped between the cars for that purpose, he gave the head brakeman the stop signal, which he answered, and then went between the cars, and before he could make the coupling, come out, and give the signal for the engine to back down it came down without warning to him and caused the injury to his leg. It conclusively appears from the evidence that if the head brakeman was advised that the plaintiff was about to go between the cars to make the coupling, and if the stop signal was given him by the plaintiff, it was his duty to protect the plaintiff by giving the necessary signals to the engineer and fireman in charge of the engine, and that it was their duty to hold the engine and not permit it to back down upon the cars until they received the proper signal so to do. On the other hand, the head brakeman testified, as a witness on behalf of the defendant, that the plaintiff never told him that he was going between the cars to make the hose coupling, that he never gave him the stop signal, and, further, that the plaintiff went between the cars just before the engine struck them, and that he, the head brakeman, immediately gave the emergency signal, but it was too late. It is apparent that, if the plaintiff's testimony was true, the head brakeman was guilty of negligence, but if it was not, and the testimony of the head brakeman as to how the accident occurred was true, he was not negligent, and the plaintiff cannot recover.

The trial court instructed the jury to this effect, and, further, that under the evidence the only negligence upon which a recovery could be based was the alleged negligence of the head brakeman. The verdict then establishes the fact that the testimony of the plaintiff was substan-

tially true, that the accident happened in the manner he claimed, and that the head brakeman never gave the stop signal to the men in charge of the engine in response to the plaintiff's signal to him before he went between the cars. The head brakeman practically admitted in his testimony that he did not give such signal, for he testified in effect that the plaintiff never told him he was going to couple the hose or gave him any signal to indicate that he was about to do so. It must, then, for the purposes of this appeal, be assumed that the head brakeman did not give the stop signal to those in charge of the engine when the plaintiff, as he claims, signaled that he was about to go between the cars, and that he was guilty of negligence in not doing so.

It is, however, urged by the defendant that such failure of the head brakeman was not and could not have been the proximate cause of the plaintiff's injury, because, if the head brakeman had given the proper signal, it would not have been seen by the fireman, upon whose side of the engine the switching was at the time being done, for the reason that he was then putting coal into the fire box. It would seem to be a common-sense proposition that the fireman could not have been guilty of negligence in failing to see and report a signal which was never given, and, further, that the negligence of the head brakeman was the defendant's negligence, and that it could not escape liability therefor by showing that its fireman was not in a position to see the signal which was never given. But, this aside, it does not conclusively nor otherwise appear from the evidence that, if the signal had been given, it would not have been seen by the fireman and communicated to the engineer.

The undisputed evidence of the engineer was to the effect that it was the duty of the fireman, when switching was being done on his side of the engine, to be in a position to receive every signal given him and communicate it to the engineer. The engineer testified as follows:

> Q. What is your answer? A. Why, it is his duty to get all the signals given. Q. And he can't do that without he is on a constant outlook for signals, can he? A. Yes; he can. Q. How? A. Yes; he can. Q. Well, it is his duty to be in a position where he can receive every signal that is given to him? A. Yes, sir. * * * Q. And for that reason he must keep a constant outlook—isn't that true? A. Yes, sir.

The fireman testified as a witness for the defendant, in reference to the signals, thus:

Well, after you had the engine backed up in answer to your signal, what, if any other, signal did you observe? A. I didn't observe any because I had to put in fire. I had to do firing, of course, to keep the engine alive. Q. That is, you did not observe any signal after that until what time? A. I didn't receive any signals after that at all until the engineer had applied the brake and stopped. Q. Well, did you see a stop signal given by the brakeman? A. No, sir. Q. It has been said here it was your duty generally to look in such a case for signals, and you are taking the signals, your explanation of not seeing is that you were attending to the duty which you also had to perform to throw in a little coal onto the fire? A. Yes, sir, it had to be done. * * *

Q. The fireman in that position that you were in is not supposed to know anything about the condition of that train? He is to obey signals which he receives from the other brakeman, isn't that true? A. Yes. Q. And communicate them to the engineer? A. Yes. * * *

Q. He obeys them, and he has no right to assume that before that engine has moved a car length he may not receive some other kind of a signal, has he? A. Why, he is watching and waiting for other signals. Q. Yes, that is your duty, too, isn't it? A. Yes. Q. By reason of the fact that he don't know but before that engine has moved half a car length he may receive a stop signal, an emergency signal, or something of that kind. That is true, isn't it? A. Yes; possible. Q. And for that reason it is his duty to be on a constant outlook for signals, isn't it? A. Yes, sir; that is, when there is no firing to do. Doing this work a man has to do firing just like he would while he was running on the road, otherwise the engine would die. * * *

Q. Now, from the time you received the back-up signal until you got that signal you didn't receive any? A. No, sir. Q. You wasn't looking for any, were you? A. I was looking when I was not firing. Q. Well, was you firing? Was you looking out any of the time? A. Why, certainly, I was looking

out.  Q.  Was you looking out after you put in the fire, after you received the back-up signal, until just before you received the emergency?  A.  I was looking out all the time when I was not firing.  Q.  Well, how much of the time was you firing?  A. That is hard to tell.  Q.  You didn't receive any signals of any kind or character between those signals, did you?  A.  No, sir.

This is substantially the entire evidence relevant to the question whether the fireman would have seen the signals if any had been given.  The presumption is that the fireman did his duty.  The evidence does not rebut this presumption; on the contrary, it fairly sustains the conclusion of the learned trial judge that it did not appear from the evidence that the fireman would not have seen the signals if any had been given.  We therefore hold that the evidence is sufficient to support the necessary finding of the jury under the charge of the court that the defendant was guilty of negligence as alleged in the complaint which was the proximate cause of the plaintiff's injury.

2.  The defendant further contends that the plaintiff was guilty of contributory negligence barring his right to recover.  The evidence discloses circumstances indicating that the plaintiff, an experienced brakeman, was negligent, but, if his testimony be true, it cannot be said as a matter of law that he was negligent.  The question of his credibility and of his contributory negligence was upon the evidence one of fact for the jury.  It follows that the trial court did not err in denying the defendant's motion for judgment.

Order affirmed.