# WILLIAM M. LYNCH v. GREAT NORTHERN RAILWAY COMPANY.[1]

November 18, 1910.

Nos. 16,688—(25).

**Rules regarding inspection of cars — question of fact.**
    *The question whether certain rules of the defendant, in respect to the*

[1]Reported in 128 N. W. 457.

inspection of cars, specifically made applicable to employees in the freight train service, applied to and controlled switchmen in the discharge of their duties, *held* one of fact for the jury.

**Evidence of contributory negligence.**

Evidence *held* not so far conclusive of plaintiff's contributory negligence as to authorize a judgment notwithstanding the verdict of the jury.

Action in the district court for Stearns county to recover $30,971 damages, alleged to have been sustained while in defendant's employ as a switchman. The facts are stated in the opinion. The case was tried before Taylor, J., and a jury which returned a verdict in favor of plaintiff for $4,000. Defendant's motion for judgment notwithstanding the verdict was granted. From the judgment entered pursuant to the order, plaintiff appealed. Reversed, with directions to order judgment in favor of plaintiff on the verdict.

*Stewart & Brower,* for appellant.
*J. D. Sullivan,* for respondent.

BROWN, J.

Plaintiff, a switchman in the employ of defendant, was injured while engaged in the discharge of his duties, and brought this action to recover damages therefor. He had a verdict in the court below, which was subsequently set aside, and judgment ordered for defendant. Judgment was entered accordingly, and plaintiff appealed.

Negligence on the part of defendant was conceded on the trial, and the sole questions submitted to the jury were: (1) The alleged contributory negligence of plaintiff; and (2) the amount of damages. The jury found against the defense of contributory negligence, and gave plaintiff a verdict for $4,000. The trial court, on the motion for judgment, held that the evidence was conclusive of plaintiff's contributory negligence, and ordered judgment for defendant; and the question presented to this court is whether this conclusion of the trial court was right.

The facts are as follows: Plaintiff was in the employ of defendant as a switchman in its yards at St. Cloud. His duties were discharged under the direction of a yardmaster, and consisted in switching cars about the yards and making up the trains. On the

morning of the accident complained of, a train of cars loaded with logs was brought into the yards at St. Cloud from Cass Lake, destined to Sauk Rapids. The cars so loaded were brought into the yards at eleven o'clock in the forenoon, and there remained until about eight o'clock in the evening, when the switching crew, of which plaintiff was a member, were ordered to transfer them to Sauk Rapids. The switching engine was used for this purpose. The cars were supplied with air brakes, and before coupling the engine thereto plaintiff examined and found the air hose connection between each car in proper condition. There were six of these cars, the rear one of which was coupled to a box car, which plaintiff disconnected at the time the cars were coupled to the engine. He gave the engineer the proper signal to proceed, and climbed upon the rear end of the last car.

These "logging cars" were equipped with an adjustable brake. When adjusted for use they were in a perpendicular or upright position at the end of the car, but were so constructed and arranged that for convenience in loading and unloading the brake staff was removed from that position and laid horizontally at the end of the car and below the surface thereof, resting in a socket constructed on the outer side to sustain and keep it in position. The logs upon this particular car were improperly loaded, the ends thereof projected out over the end of the car to such an extent that the brake staff could not be placed in its proper position for use, and it remained from the starting point in the reclining position at the end of the car. It was in this condition when the switching crew proceeded to Sauk Rapids.

After plaintiff had signaled the engineer and climbed upon the car, he claims to have heard some rattling or dragging noise, indicating to him that something about the car was not in proper order, and he made an effort to learn its whereabouts. By reason of the projecting logs he was unable to move about, but finally discovered the brake dragging upon the ground between the rails. He claims to have immediately attempted to stop the movement of the cars by turning on the air brake, and as he reached for the angle cock located at the end of the car, and near where he was stationed to per-

form that act, the wheel on the end of the brake staff struck some obstacle on the track and bounded up, striking him in the head, inflicting very serious injuries.

It is the contention of the defendant that the evidence conclusively establishes plaintiff's contributory negligence, in this: (1) His disregard and failure to observe and comply with certain rules prescribed by the company for the performance of his duties; (2) that the fact that he did not notice the condition of the brake staff, if the evidence sustains his contention in that respect, was due solely to his failure to exercise ordinary care for his own safety; and (3) that the evidence is manifestly and palpably against the conclusion of the jury that plaintiff did not notice the condition of the brake staff when he signaled the engineer to proceed, or immediately thereafter—by reason of all of which defendant insists that plaintiff contributed to his injury and cannot recover.

We are unable to concur in these contentions. The question is not whether the evidence is so manifestly against the verdict as to justify a new trial, in the discretion of the court, for a new trial was not asked for, but whether the evidence is conclusive, as a matter of law, that plaintiff was guilty of contributory negligence; and, if there be a conflict in the evidence pertinent to the question, judgment notwithstanding the verdict should not be granted. Cruikshank v. St. Paul F. & M. Ins. Co., 75 Minn. 266, 77 N. W. 958; Bragg v. Chicago, M. & St. P. Ry. Co., 81 Minn. 130, 83 N. W. 511.

1. The rules claimed to have been violated are those adopted by the company for the guidance and regulation of the conduct and duties of employees engaged in the freight train service. The rules are published in pamphlet form, and those claimed to have been violated appear therein under the heading "Freight Conductors," one of which makes it the duty of such conductors to know that the cars of their trains have been inspected and that the air brakes are in working order, and to report any neglect on the part of the inspectors to the superintendent. Subdivision (b) of this rule provides that the conductors "must, with the assistance of their brake-

112 M.—25.

men, make an examination of the brakes, couplings, uncoupling devices," and other parts of each car in their train, "so as to know that the same are in good condition," before starting, and, further, that "cars picked up at intermediate stations must be examined carefully."

The position of defendant in this connection is that the six cars of logs became in their transit to Sauk Rapids from St. Cloud a "train," within the meaning of the rules, and that the switching crew in control thereof were charged with all the duties of inspection there imposed. In our opinion, the evidence made this a question for the jury. The rules upon their face do not apply to yard switchmen or yard service, but, on the contrary, are made specifically applicable to freight conductors and their brakemen, and to the general freight train service. They can be made applicable to switchmen only by construction or analogy.

There is no substantial similarity between the ordinary train service of a railroad company and switching operations in its yard, at least no such similarity as to justify the conclusion as a matter of law that they are the same. The freight train is made up of a road engine, a long string of cars, with caboose, in charge of employees hired for and engaged in the particular department, and charged with duties peculiarly applicable to that branch of the service. Switching crews are engaged in the work of switching cars about the railroad yards, in the discharge of which the necessity of inspection of instrumentalities, such as the condition of cars moved from place to place, does not apply to the same extent as with respect to a train of cars operated for a considerable distance over the road, where there is no opportunity for examination by inspectors at local points. And though the crew in the case at bar had orders from the train dispatcher to transfer the cars to Sauk Rapids, the question whether the rules of inspection imposed upon those in charge of freight or other trains applied was properly submitted to the jury.

2. There is further contention that, irrespective of the rules, the exercise of reasonable care on plaintiff's part would have disclosed to him the fact that the brake staff was not in its proper position, and, on the contrary, in condition likely to result in an accident

if not placed in position, or otherwise secured, and, having failed to ascertain the fact, he cannot recover. This question, as one of law, must also be res..ved against defendant. It was properly submitted to the jury.

The switching yards of St. Cloud include Sauk Rapids, and cars coming into the yards at the former place are frequently transferred from place to place by the switching crew, of which plaintiff was a member. The movement of the cars in question was within those limits. The evidence tends to show that in switching cars about the yards neither the yardmaster nor the switchmen ever inspect the cars to learn whether the brakes, or other appliances, are in proper condition. No specific rules imposing that duty upon them were presented on the trial, and we discover none in the book of rules introduced in evidence. In addition to this, there was no particular necessity for the examination of the brakes upon these cars. They were all supplied with air brakes, and these plaintiff found in working order. The cars were to be moved a short distance, less than two miles, and plaintiff was justified in assuming that the air brakes would remain in order until the destination was reached.

We may assume, as indicated by some of the evidence, that ordinarily switching operations are carried on with more or less haste, depending upon the amount of work on hand, and the necessities of particular occasions, and do not permit of delay for the examination of cars scattered about the yards. And, as remarked by Justice O'Brien in the case of Cornell v. Great Northern Ry. Co., supra, page 341, 128 N. W. 22: "Employees of a railway company, who are required to perform their duties in or about railroad trains and yards, and to use considerable haste in such performance, cannot be held to exercise the same deliberate care for their personal safety as must those not so situated."

In the case at bar the learned trial court states, in the memorandum granting defendant's motion for judgment, that plaintiff "knew that the brake was out of the proper place." If this fact appeared without dispute, the order of the court could not well be disturbed. We find, however, conflicting evidence upon the subject. Plaintiff testified that he did not examine the brakes at all, and did not, when

climbing upon the car, notice whether it was in position or not. And though he was an experienced brakeman, and familiar with the rules of the company as applied to the train service, rules not expressly made or necessarily applicable to yard service, we conclude that the question whether he was negligent in not exercising care sufficient to inform himself of the condition of the brake was one of fact and not of law.

3. There was evidence offered by defendant which tends quite strongly to establish the fact that plaintiff, when climbing upon the car after signaling the engineer to proceed, dislodged the brake staff from its reclining position at the end of the car, and that he in fact knew that it was trailing along behind the car for a considerable distance before he was injured, yet he made no effort to stop the cars by turning on the air brakes. If this fact conclusively appeared, it necessarily would defeat plaintiff's right of action. But it does not in our opinion so conclusively appear. Plaintiff disputed the testimony referred to, and his credibility was for the jury. Hartman v. Minneapolis, St. P. & S. S. M. Ry. Co., 100 Minn. 43, 110 N. W. 102. The fact that the evidence may be clearly and manifestly against a verdict furnishes no basis for a final judgment notwithstanding the verdict, though it is proper in such cases that a new trial be granted. Had one been asked for and granted in the case at bar, we would have had no hesitation in sustaining it upon this branch of the case alone.

Judgment reversed, with directions to enter judgment for plaintiff on the verdict.