## �export𝔦chmond.

TOWN OF CLIFTON FORGE v. THE ALLEGHANY BANK AND OTHERS.

NOVEMBER 21, 1895.

1. MUNICIPAL BONDS—*Purchasers for Value—Application of Purchase Money to Discharge of Ultra Vires Contract.*—The *bona fide* purchaser for value of negotiable coupon bonds of a municipal corporation is in no sense bound to see to the application of the purchase money, nor to determine whether the proceeds were or were not to be used in the discharge of an *ultra vires* contract of the municipality. If the municipality had power to issue the bonds, and that power has been properly exercised, and the bonds are regular on their face, it is immaterial to what use the proceeds of the bonds are applied, so long as the purchaser has acted in good faith.

Argued at Staunton.   Decided at Richmond.

Appeal from a decree of the Circuit Court of Alleghany county, pronounced August 28, 1894, in a suit in chancery wherein the appellant was the complainant, and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

*Benjamin Haden,* for the appellant.

*R. L. Parrish,* for the appellees.

HARRISON, J., delivered the opinion of the court.

Under its amended charter, approved March 4, 1892, (see

Acts 1891-2, page 1096, sec. 5,) the town of Clifton Forge, through its counsel, has full power and authority to issue fifteen thousand dollars of coupon bonds, and to apply the proceeds of the sale thereof to improving streets and sewers, where it is deemed advisable,. and for such other purposes for the benefit of said town as in the judgment of its Council may be proper, provided that none of the bonds so issued shall be sold for less than their par value.

At a regular meeting held May 2, 1892, the Council passed an ordinance providing for the issue of thirty coupon bonds, each to be of the denomination of $500. These bonds were properly executed, and in all respects conformed to the ordinance and to the provisions of the charter authorizing them to be issued.

By the sixth clause of the ordinance, the treasurer of the town was declared to be the custodian of the bonds, and of the money arising from the sale thereof.

The town of Clifton Forge desired to own and control the plant of the Electric Light and Power Company, which was then in operation at Clifton Forge, for the purpose of lighting its streets and furnishing light to private consumers, and had been for some months negotiating for its purchase, until November 15, 1892, when the president of the Electric Light Company submitted a proposition in writing to a committee of the Town Council, agreeing to sell the town twenty-five shares of the stock of the company, and five thousand dollars of its bonds, for the aggregate sum of five thousand dollars, upon condition that, of the $5,000, the sum of $2,500 should be paid to the Brush Electric Company, of Cleveland, Ohio, on account of electrical machinery bought of it; that $2,000 should be paid to the Frick Company, on account of engine and boilers purchased of it, and that the remaining $500 should be put into the treasury of the company to pay certain small bills then due. This proposition was accepted by the

recorded vote of the Town Council on the 26th day of November, 1892, and on the same day the town exchanged with the administrator of J. L. Page $1,500 of its Electric Light Company bonds for nineteen shares of Electric Light Company stock, thus acquiring in all forty-four shares of stock, which gave it a controlling interest. In a few days after this transaction the town proceeded to reorganize the Electric Light Company, electing the town treasurer president of the company and members of its Council as directors, and taking immediate control of the affairs of the company and the conduct of its business.

At this time a number of the bonds ordered to be issued on the 2d day of the preceding May had been sold. Enough, however, remained unsold to supply, when disposed of, the necessary funds to pay off the $5,000 due from the town under its contract of purchase of the stock and bonds of the Electric Light Company. On the 22d day of December, 1892, the Alleghany Bank, through its cashier, bought four of these bonds at par value, and on the same day $2,000, the purchase price, was placed to the credit of the town treasurer in the Alleghany Bank, where his account as treasurer was kept, and was at once paid by him to the Electric Light Company on account of the amount due by the town for the stock and bonds bought by it from that company.

In December, 1893, a new Council having taken charge, the town of Clifton Forge instituted this suit, praying for an injunction, which was granted, to restrain the Alleghany Bank from selling, exchanging, or using, in any way whatever, the four bonds of the town bought by it, and asking that said bonds might be declared null and void, and the bank required to surrender them to the town.

The leading contention of the plaintiff is that it had no power to make the contract of November 26, 1892, by which it became the purchaser of the stock and bonds of the Elec-

tric Light Company; that said contract is *ultra vires*, and is therefore illegal, and the town not bound by it; and that the bonds of the town disposed of to raise money to carry out that contract are null and void.

It cannot be longer doubted that towns and cities have the right to acquire, own, and control their own machinery for lighting streets, markets, &c., and to furnish light to private consumers for a consideration. It is well nigh the universal practice for cities and towns throughout the country to provide water-works and light plants, and to use them not only for town purposes proper, but also to supply private consumers with water and light. This power exists as part of the po-lice power of the town, and is recognized in the general law (sec. 1038, Code 1887), where it is provided that towns have a right to lay off streets, alleys, &c., and improve and light the same. It is well settled as a general rule that municipal corporations cannot become subscribers to stock in private corporations for the purpose of aiding such enterprises, and thereby indirectly benefitting the community, without special legislative authority to do so. It is, however, perfectly apparent from the evidence in this case that the town did not make the contract under consideration, which it now seeks to avoid as *ultra vires*, with any purpose of aiding the Electric Light Company, or of merely becoming interested in its business as a stockholder. On the contrary, it is clear that the object of the contract was to acquire the absolute control of the electric light plant, in order that it might be managed and conducted for the benefit of the municipality. Well nigh unlimited discretion is given the town as to how it shall use the proceeds arising from the sale of these bonds, the charter providing that the proceeds shall be used in improving streets and sewers, where it is deemed advisable, *and for such other purposes for the benefit of said town as in the judgment of its Council may be proper.* Ordinarily, where such

a discretion is conferred or exists, it cannot be judicially interfered with, and this would seem to be more especially true when the object aimed at by the corporation is a legitimate one, such as acquiring the control and ownership of its own machinery for furnishing light, and only the mode adopted for accomplishing that purpose is called in question.

In the view taken, however, of this case it is unnecessary to determine whether the contract of November 26, 1892, is *ultra vires* or not, and we do not wish to be understood as deciding that question.

The Alleghany Bank, through its cashier, bought four bonds of the town of Clifton Forge from the treasurer, who was authorized to sell them, and paid the full par value in cash for them. It is true the cashier knew that the treasurer was going to use the proceeds in paying a debt the town owed to the Electric Light Company, but the bank had nothing to do with how the treasurer should pay out the money in his hands as such. That was a matter between the treasurer and the Town Council, with whom he had to settle his accounts. There was no fraud in the transaction. The bank was a *bona fide* purchaser, paying full value to the town for the bonds, and was in no sense bound to see to the application of the purchase money, or to determine whether the use to be made of the proceeds of the bonds was or was not in discharge of an *ultra vires* contract on the part of the town. The bonds bought by the bank are free from conditions, and exhibit all the requirements of negotiability. The bank knew that the town had full power under its charter to issue the bonds; that the authority to issue had been properly exercised by the Town Council; that the bonds had been properly executed by the officers and agents of the town designated by the Council for that purpose; and that the town treasurer had been designated as the custodian of the bonds—the agent of the town to sell them, and the hand to receive the proceeds of

sale.   The bank was no party to the contract of the town for the purchase of the stock and bonds of the Electric Light Company, and had no interest in that contract, and could in no way control or interfere with the disposition made by the town of the money arising from the sale of its bonds.   If the *bona fide* purchaser of municipal bonds were bound, at his peril, to determine before buying, what is often a difficult and perplexing question to decide, whether the use proposed to be made of the proceeds by the corporation is lawful or not, the facility for transfer, which is one of the chief advantages belonging to this species of property, would be destroyed, and there would be little demand for such securities on the market.

We deem it unnecessary to discuss further the questions presented in the argument of counsel for the appellee.   We have carefully considered them all, and, upon the whole case, are of opinion that the decree of the Circuit Court, dissolving the injunction and dismissing the bill filed by the town of Clifton Forge, is without error, and must be affirmed.

*Affirmed.*