[File No. 6895]

ADA S. STUTSMAN, a Resident, Citizen and Taxpayer of the City of Mandan, Brings This Action for Herself and for and on Behalf of All Other Taxpayers of the City of Mandan, Appellant, v. S. E. ARTHUR, City Auditor, George Ford, City Treasurer, Michael Tobin, County Auditor, Lawrence Tavis, County Treasurer, and Grand Lodge of the Ancient Order of United Workmen of North Dakota, a Domestic Corporation, Respondents.

(16 NW(2d) 449, 158 ALR 924)

Opinion filed October 3, 1944.   Rehearing denied December 12, 1944

*John F. Sullivan, W. H. Stutsman* and *C. F. Kelsch,* for appellant.

*L. J. Palda, Jr.,* and *C. L. Young,* for respondent Grand Lodge
A. O. U. W.

*William C. Green, Hugh H. Barber, L. T. Sproul, C. I. Foster, Robert A. Birdzell* and *Olaf M. Thorsen,* Amici Curiae.

MORRIS, Ch. J.   This is an action brought by the plaintiff in behalf of herself as a taxpayer of the city of Mandan and also in behalf of all other taxpayers of the city to enjoin certain city officials from collecting taxes levied for the purpose of paying a funding bond issue and from paying any part of the principal or interest on the bonds against which an attack is made in this suit.   The plaintiff contends that the bonds are void for reasons that will be disclosed in detail by this opinion.   The defendant, Ancient Order of United Workmen, contends that the bonds are valid and that even should they be invalid the plaintiff is not entitled to an injunction because of the expiration of periods

provided by statutes of limitation and because of the doctrines of estoppel and laches which it is contended are conclusive in this action.

The record discloses these facts. Between 1909 and 1921 public improvements were made in various street lighting, sewer and paving districts of the city for which special assessments were levied against real property in the respective districts. Special improvement warrants were issued to pay for these improvements. The warrants were drawn on and payable out of special funds designated therein. The validity of the warrants is not questioned.

Deficiencies arose in the various funds against which the special assessments were drawn as a result of the failure of some of the property owners to pay their assessments. On February 20, 1929 there remained outstanding and unpaid past due warrants and interest thereon in the approximate sum of $100,000 which represented deficiencies in the special improvement funds. On the first day of March 1929 pursuant to certain resolutions passed by the City Commissioners of the city of Mandan under the provisions of chapter 196, N. D. Sess. Laws 1927 as amended by chapter 170, N. D. Sess. Laws 1929 refunding bonds to the extent of $99,000 were issued and exchanged for the outstanding past due warrants and accrued interest. Part of the issue has been paid off. Bonds in face amount of $19,000 are still outstanding. The Grand Lodge of the Ancient Order of United Workmen, the present owner of $5,000 worth of these bonds, is made a party to this action. No other bond owners are made parties nor have they appeared herein in any manner.

The special assessment warrants for which the bonds were exchanged were not general obligations of the city. In the absence of negligence a city was not liable on warrants issued prior to July 1, 1923 for deficiencies in special assessment funds arising from the failure of owners of property to pay legally assessed special assessments. Marks v. Mandan, 70 ND 434, 296 NW 34; Bankers Trust & Sav. Bank v. Anamoose, 51 ND 596, 200 NW 103; Schieber v. Mohall, 66 ND 593, 268 NW 445.

The bonds in question were issued under chapter 196, N. D. Sess. Laws 1927 as amended by chapter 170, N. D. Sess. Laws 1929. We quote the pertinent provisions of these statutes.

Section 1(7). "This act is not applicable:

(a) To issue (s) of bonds, warrants or other forms of public securities issued on account of public improvements and for the payment of which special assessments are or shall be levied upon and against property benefited thereby which do not constitute, at the time of their issuance, a general obligation or fixed liability of the municipality issuing the same; nor the portion of any such issue, payable by general taxation, on account of assumption of a portion of the cost of such improvement under § 3723 of the Compiled Laws of 1913 or any similar law; provided, however, that nothing in this subsection shall be construed to prevent the issuance of bonds by any city or village for the purposes specified in paragraph (g) of subsection (2) of § 4 of this act."

The 1929 amendment reads as follows: Sec. 4(2)(g): "To provide money for the payment of any deficiency in the fund of any special improvement district whenever the special assessments or taxes heretofore or hereafter levied and collected for the specific improvement are then insufficient to pay the principal or interest of any special improvement warrants issued for such improvement and then due and unpaid, but only to the extent of such deficiency."

Section 17(1): "No municipality shall sell or enter into a contract for the sale of any issue of its bonds authorized by this act, for whatever purpose issued, without first advertising for bids in the manner prescribed by this section, except that bonds issued under the authorization of paragraph (g) of sub-section (2) of section 4 of this act, in cluding village bonds for such purposes, may, with the consent of the warrant holders, be exchanged for matured warrants or matured interest coupons of warrants of the special improvement fund having the deficiency on account of which such bonds are being issued, without such advertising; provided, however, that the par value and accrued interest of the bonds so delivered shall not exceed the par value and accrued interest of the warrants and interest coupons and accrued interest thereon, for which they are exchanged."

The 1929 amendment was passed by the legislature as an emergency measure and was approved January 28, 1929. On February 20, 1929 the City Commissioners of the City of Mandan adopted an initial res-

olution for the issuance of the bonds in question and the sale thereof. On February 27, 1929 the Commissioners adopted a resolution empowering and directing the city treasurer to exchange the bonds for the special assessment warrants heretofore mentioned on a basis of par value and accrued interest. On the same day an ordinance was passed making a levy of a direct annual tax for the purpose of paying the principal and interest of the funding bonds.

The passage of the resolutions and an ordinance is set forth in the "Commissioners' Proceedings" published in the Mandan Daily Pioneer on March 1, 1929. No other notice of the issuance or exchange of the bonds was published.

The defendant, A. O. U. W., purchased five $1000 bonds due March 1, 1948 and is still the owner and holder thereof. The purchase was made in good faith for a valuable consideration and without actual notice or knowledge of any infirmity therein except such notice as may be imputed to the defendant by operation of law. When the bonds were purchased and from whom does not appear.

Interest coupons falling due up to and including March 1, 1939 were paid by the city. This is the first suit in which the validity of the bond issue is challenged. The plaintiff appeals from a judgment dismissing the action.

Upon the facts and the law that we have thus far referred to appear two main questions concerning the validity of the bonds. The first is, does the statute under which the bonds are purported to be issued provide for the issuance of funding bonds to pay deficiencies in special improvement funds where the warrants drawn against such funds are not general obligations of the city and the city is not generally liable for the deficiencies? Second, if the statute does so provide is it constitutional?

Section 1(7)(a) of the statute above quoted states that the act is not applicable to issues of warrants for public improvements that are not general obligations or fixed liabilities of the issuing municipality. However, the last portion of the same paragraph, by exception, makes the act applicable to the issuance of bonds for purposes specified in § 4(2)(g). The latter paragraph permits the issuance of bonds for the purpose of paying deficiencies in special improvement funds "whenever all special assessments heretofore or hereafter levied

and collected for the specific improvement are insufficient to pay the special improvement warrants issued against such improvement with interest, . . ." The amount of bonds that may be issued is specifically limited to the amount of the deficiency. Thus it appears that paragraph (g) when read in connection with the latter part of paragraph (a) permits the issuance of bonds to pay deficiencies in special improvement funds for which the municipality is not otherwise generally liable. The two paragraphs referred to, when taken together, mean that the act is not applicable so as to permit the issue of funding bonds to refund warrants issued on account of public improvement funds where such warrants are not general obligations of the issuing municipality but by exception provide that funding bonds may be issued to the extent of existing deficiencies resulting from the failure to collect special assessments. The statute thus provides authority for the issuance of the bonds in question unless such authority be found to conflict with some constitutional provision.

The most serious constitutional challenge to the validity of the bonds in question is that, despite statutory authority, their issuance was in violation of the provision of section 185 of the North Dakota Constitution which prohibits the state and its political subdivisions from loaning or giving credit or making donations to or in aid of any indivdual association or corporation except for the reasonable support of the poor. As an approach to this question we would refer to the statutes authorizing public improvements within municipalities and the provisions for financing them.

By chapter 62, N. D. Sess. Laws 1905 the legislature provided a new and complete act for the organization and government of cities. It authorized any city to create sewer, paving and water main districts and to enter into contracts for the performance of work to be done pursuant to plans and specifications provided for in the act. Section 149 in part provides: "Each contract so entered into small state the time on or before which such work must be completed, and must state from what fund the amount to be paid thereon by the city is to be paid, and that the consideration of such contract is payable only in warrants drawn on such fund, and that such city assumes and incurs no general liability under such contract."

Provision is made for the levying of special assessments against property benefited. "All special assessments levied under the provisions of this act shall constitute a fund for the payment of the cost of the improvement for the payment of which they are levied, and shall be diverted to no other purpose," . . . Section 151. Provision was also made (§ 163) conferring power on the city to pay not to exceed one-fifth of the cost of the work by general taxation, the tax thus levied to be credited to their specific special assessment funds when collected. Warrants were required to state upon their face the purpose for which they were issued and the funds from which they were payable and the city treasurer was required to pay them out of the funds on which they were drawn. Section 3745, Comp. Laws 1913, as amended by chapter 69, N. D. Sess. Laws 1915 made this procedure applicable to the installation of street lighting systems.

Section 149 of the 1905 act became § 3709 and § 156 became § 3716, N. D. Comp. Laws 1913. These sections were considered by this court in the cases above cited and it was determined that the city was exempt from any general liability on the warrants nor was the city generally liable for deficiencies remaining in special assessment funds due to the failure of property owners to pay special assessments. The law was not changed with respect to the city's general liability until the enactment of chapter 174, N. D. Sess. Laws 1923. The bonds with which we are here concerned were issued to fund warrants issued prior to 1923. Chapter 196, N. D. Sess. Laws 1927 purports to authorize the issuance of such bonds without an election and chapter 170, Sess. Laws N. D. 1929 permits such bonds to be exchanged for matured warrants and interest coupons at par value without advertising for bids. The bonds in this case were so exchanged. Thus the holders of the warrants became the owners of the bonds in the first instance. The defendant, A. O. U. W., is a subsequent purchaser in good faith and for a valuable consideration. The record does not disclose when the purchase was made.

The plaintiff contends that the bonds are void and that as general obligations of the city they constitute gifts to the holders of warrants drawn against specific special assessment funds. Two theories applicable to this general situation are presented by diverse decisions from other jurisdictions.

In Stanley v. Great Falls, 86 Mont 114, 284 P 134, 70 ALR 166, the court had before it a statute providing for the creation of a revolving fund by the loan of money from the general fund or by the levy of a general tax, from which loans were to be made to improvement district funds which were insufficient to meet warrants then due. It was held that in so far as the statute was applicable to obligations of improvement districts existing at the time of its enactment it was violative of a constitutional provision prohibiting taxation for other than public purposes. In arriving at this conclusion the court said: "The purpose of the act, in so far as it authorizes the assumption of liability for losses suffered by the holders of bonds and warrants issued prior to the passage of the act, must be held to be reimbursement of those holders for such losses, and, although it is urged that such action would tend to rehabilitate the city's credit, such a purpose, if it existed, must be held to be the secondary or incidental purpose. It is not even clear that action was necessary for such secondary purpose. Proposing purchasers of bonds and warrants look only to the present condition of the law, and therefrom determine whether or not such bonds and warrants furnish a reasonably safe investment; it can hardly be presumed that the fact that other investors have suffered loss under a different condition of the law would deter proposing investors from purchasing bonds and warrants in the future."

Thus the court held that the primary result in applying the statute retroactively would be to benefit the holders of the warrants and that the public benefit would be secondary and incidental.

The Supreme Court of California seemingly takes a different view from that of the Montana court in Dunsmuir v. Porter, 7 Cal(2d) 269, 60 P(2d) 836. In that case a statute authorizing the refunding of district improvement bonds by the issuance of general improvement bonds by a city was held valid as against the challenge that it authorized a gift of public funds of the city to owners of the district bonds. The district bonds were not general obligations of the city.

The statute in question stated that: "It is the intent of this act that investments of such fund shall be for the purpose of aiding and facilitating the making of needed public improvements in the municipality or for the purpose of limiting or preventing such increasing of district

taxes or assessments as might lessen or impair the general tax revenues of the municipality from any district or districts, or for the purpose of providing means whereby district indebtedness or assessments represented by or securing bonds may be reduced."

The court pointed out that under the Improvement Bond Act of 1915, the bonds sought to be refunded were secured by special assessments levied against property owners of the district in proportion to the benefits received and were further secured by a levy of 10% upon each $100 of assessable property within the city. There were four bond issues to be refunded.

"To relieve the taxpayers of the city of the burden imposed upon them by the Improvement Bond Act of 1915, while said bonds are in private ownership, is an object of considerable consequences to all the taxpayers therein. This obligation may grow to substantial proportions and the tax to meet it may become, and in many instances has become, a heavy burden upon all the property owners of the city. Evidently this is the case in the city of Dunsmuir. To alleviate this condition and to lessen this excessive burden upon the property owners of the city is undoubtedly a matter of public concern, and any means adopted by the authorities of the city with that object in view would be a distinct public, or municipal purpose. If, in effectuating this purpose, the bondholders or other persons receive some indirect, or even some direct, benefit, that fact would not prevent the city from carrying out such public purpose. . . . The property owners of the city, who alone are liable for the payment of the general improvement bonds, are relieved from the payment of the annual tax of 10¢ for each district upon each $100 of assessable property in the city."

In another California case, San Diego County v. Hammond, 6 Cal (2d) 709, 59 P(2d) 478, 105 ALR 1155, the court had before it the question of the constitutionality of a statute providing for county assistance to financially distressed improvement districts by the purchase of improvement district bonds and coupons at a discount with a view to the cancellation of a part of the bonds and corresponding cancellation of delinquent special assessments and further providing for the making of contributions by the county to the sinking funds of such districts. The purpose expressed by the act was to restore to the tax

rolls of the county a large amount of property within the assessment districts which had been sold to the state and was contributing nothing to the support of the county government. This purpose the court held was one within the constitutional powers of the legislature to accomplish and the statute was not rendered unconstitutional by the fact that in carrying it out certain individuals were incidentally benefited thereby.

The seeming difference in the California and Montana decisions resolves itself into a difference of purpose. The California court decided that the major purpose of the Act under consideration was to relieve the taxpayers of the city of an excessive burden that might impair the general tax revenues and that the fact bondholders whose bonds were being refunded might receive some benefit would not prevent the city from carrying out this purpose which was public and not private. In the Montana case the question of impairing general tax revenues was not presented. The only public purpose urged was the rehabilitation of the city credit. The holders of outstanding warrants secured only by assessments on property benefited would have substituted therefor general obligations of the city and thus would have their losses made good at the expense of the general taxpayers. The court held that this being a private purpose and the primary purpose it would be violative of the constitutional provision prohibiting taxation for other than public purposes.

We agree with the California court that where an appropriation of public funds is primarily for public purposes it is not necessarily rendered violative of constitutional provisions against gifts and loans of public credit by an incidental result which may be of private benefit. On the other hand if the result is chiefly that of private benefit, an incidental or even ostensible public purpose will not save its constitutionality. Upon the facts before us private parties were the owners of warrants drawn against specific special improvement funds in which deficiencies occurred by virtue of the failure of property owners to pay their special assessments. The warrants were obligations only against the funds on which they were drawn. When those funds were exhausted the city had no obligation to replenish them by taxation. In fact it had no authority to do so. Marks v. Mandan, 70 ND 434, 296 NW 34. When the warrants were issued the purchasers were charge-

able with notice of the law with respect thereto including the limitations on the power of the city. They are presumed to have purchased these securities with knowledge of the limitations upon the funds provided for their payment.

Chapter 196, ND Sess Laws 1927 as amended by chapter 170, ND Sess Laws 1929 provided for the issuance of funding bonds of general liability and for their substitution by exchange for warrants on the special funds to the extent of deficiencies. These deficiencies represented potential losses on the part of the warrant holders; losses which under the law as it existed at the time of issuance fell wholly on the purchasers and against which the city owed no obligation to protect anyone. The funding bond acts do not indicate a purpose to safeguard the general revenues of the city nor do any facts disclosed by the record in this case indicate that the general revenues were or might be imperiled.

It cannot be said that the purpose of the funding bonds was to rehabilitate the credit of the city. Since they were to be issued only for deficiencies they would not lighten the burden of those paying assessments but on the contrary would add to those burdens a general tax, the proceeds of which would amount to a gift to the warrant holders. The only material benefit resulting to anyone from this bond issue accrued to the warrant holders who were unable to collect their warrants and who already had all the security that they contracted for when they purchased the warrants. The conclusion is inescapable that the statutes in question in so far as they may be construed to permit the issuance of bonds to refund special improvement warrants issued prior to the time the city became generally liable for improvement fund deficiencies are violative of § 185 of the North Dakota Constitution.

The A.O.U.W., being an innocent purchaser of the bonds in question, urges that neither the city of Mandan nor its taxpayers can now rely upon the invalidity of the bonds because they are estopped from asserting such invalidity by recitals contained in the bonds themselves and in a certificate of the city auditor indorsed on each bond.

The rule is firmly established by a long line of federal and state decisions including those of this court that recitals in municipal bonds in the hands of a bona fide holder are conclusive on the municipality as to matters of fact contained in the recitals where they are made by

officials having authority to make them in behalf of a municipality that has power to issue bonds in the nature of those in question. Coler v. Dwight School Twp. 3 ND 249, 55 NW 587, 28 LRA 649; Flagg v. School Dist. 4 ND 30, 58 NW 499, 25 LRA 363; State v. School Dist. 18 ND 616, 120 NW 555, 138 Am St Rep 787. See also the following exhaustive notes. 98 Am Dec 664; 51 Am St Rep 822; LRA1915A 916; 86 ALR 1057.

The following statutory situation is pointed out as the factual basis for invoking the doctrine of estoppel. Under § 3716, ND Comp. Laws 1913 a municipality was generally liable for deficiencies remaining after all special assessments that had been levied for a specific improvement had been collected and applied in payment of the warrants issued for such improvement. Marks v. Mandan, 70 ND 434, 296 NW 34. Section 3716 was amended by chap. 174, ND Sess. Laws 1923 (§ 3716, Supp. to Comp. Laws). This amendment obligated municipalities to levy general taxes to make good deficiencies in special assessment funds which existed upon maturity of the last warrant drawn against a specific fund. Thus the category of deficiencies for which the municipality had power to make itself generally liable was broadened to include deficiencies existing after the maturity of the last warrant, regardless of whether all assessments had been collected. Marks v. Mandan, 70 ND 474, 296 NW 39. Chapter 174 is prospective only and does not apply to special assessment funds created prior to its enactment. Marks v. Mandan, 70 ND 434, 296 NW 34.

The A.O.U.W. argues that bonds could be lawfully issued under the provisions of chap. 196, ND Sess. Laws 1927 as amended by chap. 170, ND Sess. Laws 1929 for the purpose of refunding deficiencies for which a municipality was generally liable under the original § 3716, ND Comp. Laws 1913 or the amendment of 1923. It is further asserted that whether such lawfully refundable deficiencies existed was a question of fact concerning which the municipality might estop itself by recitals. Whereupon, it is sought to invoke the rule set forth in Town of Aurora v. Gates (CCA 8th) 208 F 101, LRA1915A 910, which is as follows: "A municipality or a quasi municipality may not, by the recitals or certificates in its bonds, estop itself from denying that it has power to issue them, when the laws are such that there

can be no state of facts or of circumstances under which it would have authority to emit them. But if the laws are such that there might under any state of facts or of circumstances be lawful power in the municipality or quasi municipality to issue its bonds, it may, by recitals therein, estop itself from denying that those facts or circumstances exist, and that it has lawful power to send them forth, unless the Constitution or act under which the bonds are issued prescribes some public record as the test, and no such test was prescribed in this case, of the existence of some of those facts or circumstances."

The bonds involved in the case at bar contain the following recital: "This bond is one of a series of bonds all of like date and tenor except as to maturities, all issued by said city for the purpose of providing money for the payment of deficiencies in the funds of special improvement districts of said city wherein the assessments and taxes heretofore levied and collected on account of the improvements in such districts are insufficient to pay the principal and interest of the special improvement warrants issued for such improvements which are now due and unpaid, and is issued pursuant to and in full conformity with the constitution and laws of the state of North Dakota thereunto enabling, including chapter 196, Laws of 1927, and acts amendatory thereof and supplemental thereto, and pursuant to resolutions and ordinances of said city duly passed, approved and recorded.

It is Hereby Certified and Recited that all acts, conditions and things required by the constitution and laws of the State of North Dakota, to have been done, to have happened, and to have been performed precedent and in issuance of this bond have been done, have happened, and have been performed, in regular and due form, time and manner as required by law, that prior to the issuance hereof a direct, annual, irrepealable tax has been duly levied on all the taxable property in said City sufficient to pay the interest hereof when it falls due and also to pay and discharge the principal of this bond at maturity, and that this bond, together with all other indebtedness of said City outstanding on the date hereof, does not exceed any constitutional or statutory limitation of indebtedness, nor did the indebtedness funded hereby exceed any such limitation."

Thus the recital sets forth the purpose for which the bonds were issued, a reference to the statutes and ordinances under which they were

issued and a statement that they were issued pursuant to and in full conformity with the constitution and laws of the state. It appears to be broad enough to include facts that come within the provisions of the statutes under which bonds could be lawfully and constitutionally issued to refund special improvement deficiencies for which the city might be generally liable. The A.O.U.W. asserts that, being an innocent purchaser, it was not bound to look beyond the face of the bonds in satisfying itself of their validity, even though they were actually issued for a purpose forbidden by the state Constitution.

The position of the A.O.U.W. is supported by a number of cases as well as by text authorities. Hackett v. Ottawa, 99 US 86, 25 L ed 363, involved municipal bonds which stated upon their face that they were issued in accordance with certain ordinances providing for loans for municipal purposes. The principal defense was that the recital as to a loan for municipal purposes was untrue; that the bonds were not issued for such purposes but as a donation to a private corporation. It was held that the city was estopped by the recitals to say, as against bona fide holders of the bonds, that they were not issued or used for municipal or corporation purposes. In Dillon on Municipal Corporations, 5th ed, § 940, it is said: "The recital in a municipal bond that it is issued to fund a valid indebtedness is effective in the hands of an innocent holder to foreclose all questions relating to the validity of the debt thus funded, including the objection that the debt funded was issued in excess of constitutional or statutory limitations, and including the objection that it was issued without statutory authority, and including the objection that by its nature it constituted no indebtedness at all, those matters having been conclusively determined by the finding which the enabling act impliedly authorized when it entrusted the duty of funding to the local officials."

Among the cases cited by the author in support of the foregoing statement is Waite v. Santa Cruz, 184 US 302, 46 L ed 552, 22 S Ct 327, which involved a recital in bonds issued by a city, to the effect that they were issued to refund a bonded indebtedness in pursuance of and in conformity with the Constitution of the state and the ordinances of the city and in pursuance of and in conformity with a vote of the electors at a special election conducted as provided by the act and that all

acts, conditions and things required by law to be done precedent to and in the issuance of the bonds had been done, happened and performed as required by law. In holding that the city was estopped to assert that a portion of the bonds being refunded were not of the class or character for which it was authorized to issue refunding bonds under the statute the court said: "The city of Santa Cruz had power, under the Constitution and laws of California, to refund its outstanding indebtedness, evidenced by bonds and warrants. The nature and extent of such indebtedness were matters peculiarly within the knowledge of its constituted authorities. When, therefore, the refunding bonds in suit were issued with the recitals therein contained, the city thereby represented that it issued them under and in pursuance of and in conformity with the act of 1893 and the constitution of the State. As nothing on the face of the bonds suggested that such representations were false, purchasers had the right to assume that they were true, especially in view of the broad recital that everything required by law to be done and performed before executing the bonds had been done and performed by the city. As there was power in the city to issue refunding bonds to be used in discharging its outstanding indebtedness of a specified kind, purchasers were entitled to rely upon the truth of the recitals in the bonds that they were of the class which the act of 1893 authorized to be refunded."

The following federal and state cases dealing with recitals in funding and refunding bonds follow the same line of reasoning as that expressed in Waite v. Santa Cruz, supra; Cadillac v. Woonsocket Inst. for Savings (CCA 6th) 58 F 935; West Plains Twp. v. Sage (CCA 8th) 69 F 943; Brown v. Ingalls Twp. (CC) 81 F 485; Kiowa County v. Howard (CCA 8th) 83 F 296; Huron v. Second Ward Sav. Bank (CCA 8th) 86 F 272, 49 LRA 534; Second Ward Sav. Bank v. Huron (CC) 80 F 660; Seward County v. Aetna L. Ins. Co. (CCA 8th) 90 F 222; Wesson v. Mt. Vernon (CCA 7th) 98 F 804; State v. Wichita County, 62 Kan 494, 64 P 45. See also Presidio County v. Noel-Young Bond Co. 212 US 58, 53 L ed 402, 29 S Ct 237; Knott County v. Aid Asso. for Lutherans (CCA 6th) 140 F(2d) 630.

The City of Mandan, under the provisions of Chap. 196, ND Sess. Laws 1927 as amended by chap. 170, ND Sess. Laws 1929, had au-

thority to issue bonds to fund deficiencies resulting from the failure to collect special assessments due to special assessment funds. The statute is general in its terms. Under the decision of this Court in Marks v. Mandan, 70 ND 474, 296 NW 39, the category of deficiencies for which the municipality might become generally liable was limited to those existing in special assessment funds wherein all assessments that had been levied had been collected, or funds that had been created subsequent to the effective date of chap. 174, ND Sess. Laws 1923. The City of Mandan had constitutional authority under the statute referred to in the bonds to issue them for the purpose recited therein, provided that the deficiencies thus funded were those for which the City had power to make itself generally liable. Whether the special assessment funds were created after the effective date of the statute or whether all assessments that had been levied had been collected are obviously questions of fact, the answers to which were within the special knowledge of the municipal authorities who had the duty of determining them as conditions precedent to the lawful exercise of authority to issue funding bonds. Under the authority of Waite v. Santa Cruz, 184 US 302, 46 L ed 552, 22 S Ct 327, and other cases cited above the determination of such officers is conclusive on the municipality and its taxpayers. Bona fide purchasers of the bonds were entitled to rely upon the recitals of the authorized officers contained in the bonds. Those officers are presumed to have exercised their authority and performed their duty in accordance with law and in a constitutional manner, Pine Tree Lumber Co. v. Fargo, 12 ND 360, 96 NW 357; Lower Yellowstone Irrig. Dist. v. Nelson, 71 ND 439, 2 NW (2d) 180. When they recite that they have done so, such recital may be relied upon by innocent holders who will not be charged with knowledge of a breach of duty on the part of the officers toward the municipality and the taxpayers. The purchasers of the bonds are relieved by the recitals of any duty to inquire as to the purpose for which the bonds are issued. They recite a purpose that was both lawful and constitutional. Under the well established and definite rule indicated by the cases above cited we can reach no other conclusion but that the plaintiff is estopped by the recitals in the bonds from challenging their validity upon the ground that they were issued for a purpose forbidden

by the State Constitution. The judgment of the District Court is, therefore, affirmed.

BURKE, J., and ENGLERT, Dist. J., concur.

MR. JUSTICE CHRISTIANSON and MR. JUSTICE BURR, deeming themselves disqualified, did not participate, HON. M. J. ENGLERT, Judge of the First Judicial District and HON. FRED JANSONIUS, Judge of Fourth Judicial District, sitting in their stead.

NUESSLE, J. (dissenting). I am unable to concur in all that is said in the foregoing opinion or in the result which it reaches.

Chapter 196, Session Laws 1927, as amended by chapter 170, Session Laws 1929, insofar as it authorizes cities to assume liability for deficiencies in special assessment funds arising from failure of owners of property to pay their special assessments, is unconstitutional as applied to special assessment warrants issued prior to July 1, 1923, when chapter 174, Session Laws 1923, amending and re-enacting § 3716, Comp. Laws 1913, became effective. The bonds involved in the instant case recite (see the opinion) the purpose of their issuance and so, on their face, give notice that the funds thereby to be provided were for the payment of deficiencies in special improvement district funds wherein the special assessments, levied and collected on account of the improvements in such districts, were insufficient to pay the principal and interest of the warrants issued for such improvements. Whosoever purchased those bonds was thus put on notice of the purpose of their issuance and was charged with knowledge of the fact that if such warrants had been issued prior to July 1, 1923, the city could not assume responsibility for them because of the prohibition contained in § 185 of the Constitution. It therefore became the duty of the purchaser to inquire as to when those warrants were issued. If he failed to make that inquiry and ascertain the facts, it was his own negligence which caused any loss he might suffer by their purchase. The recital in the bonds that they were "issued pursuant to and in full conformity with the constitution and laws of the State of North Dakota thereunto enabling, including chapter 196, Laws of 1927 and acts amendatory thereof and supplemental thereto" was a recital of a mere conclusion

526

of law and should not be held sufficient to raise an estoppel and thus nullify the protective provisions of § 185 of the Constitution.

JANSONIUS, Dist. J., concurs in the foregoing dissent.