ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a corporation,
Plaintiff,

v.

TOWN OF MONONGAH, WEST VIRGINIA, a West Virginia municipal corporation; Robert Nichols, Mayor of the Town of Monongah; Betty Efaw, Recorder of the Town of Monongah; William O. Johnson, Treasurer of the Town of Monongah; and Grover C. Cochran, Marion Mathews, Andy Stevenski, Elmer Rauer and Junior Nick Jacobin, Members of the Council of the Town of Monongah, Defendants.

Civ. A. Nos. 674–F, 1045–W–a.

United States District Court
N. D. West Virginia,
at Wheeling.
June 1, 1962.

James M. Guiher and Oscar J. Andre, Clarksburg, W. Va. (Steptoe & Johnson, Clarksburg, W. Va., of counsel), for plaintiff.

Frank C. Mascara, Fairmont, W. Va., for defendants.

CHARLES F. PAUL, District Judge.

This action is brought by the plaintiff, as the owner and holder of 84 bonds, each in the principal amount of $1,000.00, dated November 1, 1958, and entitled "Town of Monongah, Waterworks Revenue Bond, Fourth Series", and maturing at various dates beginning May 1, 1970, and ending May 1, 1983. There has been no default in the payment of interest, but plaintiff alleges that there has been a default in the full performance of obligations assumed by the issuer in the terms of the bonds and the bond ordinance with reference to sinking fund requirements, and that further defaults in this respect are threatened. The plaintiff seeks a declaratory judgment that the bonds in its hands are valid and subsisting obligations of the issuer, according to their tenor, including the sinking fund requirements, and for an order of enforcement in accordance with the declaratory judgment.

The case is submitted upon plaintiff's motion for summary judgment, based upon the pleadings and their exhibits, affidavits filed in support of the motion, and a photocopy, supplied by counsel, of the minutes and an order of Public Service Commission of West Virginia entered March 31, 1960, and now ordered filed as part of the record in this case.

The entire issue of the Fourth Series bonds is in the principal amount of $115,000.00, and, of this amount, the plaintiff purchased its 84 bonds from an independent bond-marketing concern on or about May 6, 1959, in good faith and for full value, and without any knowledge or notice of any infirmity in the bonds or in the proceedings or conditions surrounding their issue, either antecedent or subsequent thereto.

Pertinent provisions printed on the face of the bonds are as follows:

"This bond is one of a series authorized to be issued for the purpose of financing the cost, not otherwise provided, of betterments and improvements to the municipal waterworks of said Town under and in full compliance with the Constitution and Statutes of the State of West Virginia, including particularly Article 12 of Chapter 8 of the West Virginia Code. This bond and the series of which it forms a part are payable on a parity with each other but only from a fixed amount of the revenues to be derived from the operation of said waterworks, which amount shall be sufficient to pay the principal of and interest on said bonds as and when the same become due and payable, subject, however, to the priorities and vested rights in favor of the security and payment of the presently outstanding Waterworks Revenue Bonds dated May 1, 1947; Waterworks Revenue Bonds, Series 1950, dated May 1, 1950; and Waterworks Revenue Bonds, Third Series, dated November 1, 1950. Provision has been made for setting aside as a special account, identified as 'Waterworks Bond and Interest

Redemption Account,' a sufficient portion of said revenues to pay all of said bonds, subject to the priorities and vested rights aforesaid. * * *

* * * * * *

"It is hereby certified, recited and declared that all acts, conditions and things required to exist, happen and be performed precedent to and in the issuance of this bond do exist, have happened and have been performed in the manner and form required by law, that said Town will continuously operate its waterworks and that a sufficient amount of the revenues derived from the operation thereof has been pledged to and will be set aside into a special account for the purpose of paying the principal of and interest on this bond and all other bonds which by their terms are payable therefrom and that the amount of this bond, together with all other obligations of said Town, does not exceed any limit prescribed by the Constitution or Statutes of the State of West Virginia."

Other provisions on the face of the bond purport to make the bonds a lien on the municipal waterworks, as provided in Article 12 of Chapter 8 of the West Virginia Code, and show that the bonds are not general obligations of the Town.

In accordance with Chapter 8, Article 12, Section 11 of the West Virginia Code, the defendant Town, in its bond ordinance authorizing the Fourth Series bonds, adopted March 24, 1959, among other things, provided as follows:

" * * * from and after the issuance of any of the bonds hereby authorized the amounts of the revenues to be paid into the special fund identified as the 'Waterworks Bond and Interest Redemption Account', (hereinafter called the 'sinking fund') each month during the respective fiscal years, shall be increased over the amounts as otherwise provided by the respective ordinances authorizing the issuance of said presently outstanding bonds by the sum of $845.00. The aggregate amounts to be so set aside and paid into said sinking fund shall be sufficient to pay the interest on and principal of all bonds which by their terms are secured by and payable from said sinking fund as the same become due, * * *."

In accordance with the ordinance, and the obligations assumed by the terms of the bond issue and the relevant statutes, the defendant Town paid such monthly sum of $845.00 from its water revenues into the "sinking fund" for each of the months subsequent to the marketing of the bonds until the month of June, 1961, and for that and subsequent months (under circumstances hereinafter detailed) it reduced its monthly deposits to $211.25. This reduced amount is insufficient properly to service the bonds by providing for current interest payment and for ultimate payment and redemption. No question has been raised about the sufficiency of the former provision of $845.00 monthly.

After a hearing held September 21, 1961, this court granted a motion by the plaintiff for entry of a protective order *pendente lite*, requiring the defendant Town to collect from water revenue funds and to deposit in a separate account in the Town's regular bank depository, sufficient sums to make up the difference between the current payments of $211.25 to the Sinking Fund Commission of West Virginia and the monthly amounts of $845.00 fixed in the Town's bond ordinance, pending further order of the court in this cause.

The complaint alleges and the answer admits that the purpose of the bond issue was to provide funds for the construction and equipment of a waterworks administration building; that the building was completed and the proceeds of the bond issue fully used for those purposes; and that the administration of the waterworks is now being conducted from said building and the Town has used and expended, and has received and is now enjoying the full benefit from, the pro-

ceeds of the sale of the Fourth Series bonds.

The occasion for the reduction of the Town's payments into the Sinking Fund and the sole defense presented by the defendants' answer herein is an order entered by the Public Service Commission of West Virginia March 31, 1960, as follows:

"The respondent shall cease and desist from using water utility revenues to pay the principal and interest on the Fourth Series of Negotiable Water Works Revenue Bonds in excess of 25 per cent of the amount necessary to service said bonds."

The minutes of the Public Service Commission indicate that the order was entered in "Case No. 4984", entitled,

"TOWN OF MONONGAH, a municipal corporation, doing business as MONONGAH MUNICIPAL WATER WORKS. Investigation of rates and charges, method of operation, water revenue bond issues; proceeding upon motion of the Commission."

The "case" resulted from an investigation and an ex parte hearing conducted by the Public Service Commission, in which neither the plaintiffs nor any other of the owners and holders of said bonds, nor any representative thereof, were parties or represented. The Public Service Commission found that the building, which was erected and equipped from the proceeds of the bond issue, was in reality a "town hall", used jointly by the waterworks and other officials and departments of the Town, and that 25% was a fair estimate of the extent to which the building is used exclusively by the waterworks. The Commission concluded that it was ultra vires for the Town to use water utility revenues completely to finance such a building, and, with respect to the interests and rights of the nonrepresented holders and owners of the bonds, said, "There is a duty (to themselves at least) upon those lending money secured by water revenue bonds to see that the money loaned is used for water utility purposes.

Having failed to discharge this duty the lenders have no one to blame but themselves when water revenues are restricted to the payment of no more of the bonded debt than underlies expenditures for water utility property."

The Public Service Commission of West Virginia was promptly notified of the commencement of this suit, has been advised of each step taken therein, and has been furnished with copies of the pleadings and all other filings in this suit, and has not sought to intervene.

In the opinion of this court, the findings and order of the Public Service Commission of West Virginia, insofar as they and it affect or attempt to affect the legal rights of holders in due course of the bonds and the obligations of the defendants with respect thereto, are an unjustified usurpation of the judicial function, and that its findings of law with respect to such rights are not only without jurisdiction, but are clearly wrong as a matter of law. It is within the jurisdiction of the Public Service Commission to approve rates charged by the utilities which are subject to its supervision, having proper regard for the legal obligations of the utility. The Commission's concern for the consumer and its impatience with a utility which it feels has misused funds are understandable and commendable, but it has no right or power to punish a recalcitrant utility by telling it it does not have to perform its obligations to holders in due course of its bonds properly issued under statutory authority.

That the Public Service Commission is wrong in its finding (that it is the duty of an innocent purchaser of the bonds, without knowledge of any infirmity and in the absence of facts showing actual bad faith, to see to the proper application of the proceeds of the bond sales), is too well settled to require extensive citation of authorities. See, for example, 2 Dillon, Municipal Corporations, Sec. 931, at page 1476; 13 Michie's Jurisprudence, Municipal Corporations, Sec. 37, at page 408; 6A Fletcher Cyc. of the Law of Private Corporations, Sec.

2714, at pages 122–3. See also Town of Clifton Forge v. Allegheny Bank, 92 Va. 283, 23 S.E. 284 (1895).

West Virginia has a specific statute, with reference to general obligation bonds, which is declaratory of the case law, as follows:

"The proceeds derived from the sale of any bonds shall be used only for the purpose or purposes for which the bonds were issued as set out in the order or ordinance submitting the question to vote, but *the purchaser of the bonds shall not be obliged to see to the application thereof.*" (Emphasis supplied.) (West Virginia Code Chapter 13, Article 1, Section 22.)

That the Public Service Commission of West Virginia has no jurisdiction to determine judicial questions, is also settled. See Wheeling Steel Corporation v. Public Service Commission, 90 W.Va. 74, 110 S.E. 489 (1922), and Charleston Apartments Corp. v. Appalachian Electric Power Co., 118 W.Va. 694, 192 S.E. 294 (1937).

It is also settled in West Virginia that the order of an administrative officer or body is no justification for a corporation, created by and as an instrumentality of the State, in seeking to avoid its obligations, assumed in a bond issue, even where no default has yet occurred in the bonds, principal or interest. Such an obligation can be enforced in a declaratory judgment proceedings in Federal Court. See Guaranty Trust Co. v. West Virginia Turnpike Commission, 109 F.Supp. 286 (S.D.W.Va.1952).

It is also well settled that a municipal corporation is estopped by recitals in bonds to assert, as against a holder in due course, that the recitals were false or incorrect. See Stutsman v. Arthur, 73 N.D. 504, 16 N.W.2d 449, 158 A.L.R. 924 (1944), and the cases cited in an exhaustive note on the subject in 158 A.L.R. 938. See also City of Florence v. Anderson (Cir. 4, 1938), 95 F.2d 777.

The order of the Public Service Commission is a nullity, and the plaintiff is entitled to the declaratory judgment as prayed for and a proper enforcement order, (including a turn-over order for the funds deposited in pursuance of the *pendente lite* protective order), and to its costs.

Settle order on notice.